1200/18-7152.S/kmc/bja

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM BARNHOUSE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Cause No.:  1:19-CV-00958-TWP-DLP |
| | ) | |
| CITY OF MUNCIE, FONDA KING, STEVE | ) | |
| STEWART, GORDON WATTERS, JOSEPH | ) | |
| TODD, STEVE BLEVINS, DONALD BAILEY, | ) | |
| TERRY WINTERS, CARL SOBIERALSKI, | ) | |
| AS-YET UNIDENTIFIED MUNCIE POLICE | ) | |
| OFFICERS, and AS-YET UNIDENTIFIED | ) | |
| EMPLOYEES OF THE INDIANA STATE | ) | |
| POLICE CRIME LAB, | ) | |
| Defendants. | ) | |

**DEFENDANTS, CITY OF MUNCIE, FONDA KING, STEVE STEWART,
GORDON WATTERS, JOSEPH TODD, STEVE BLEVINS, DONALD BAILEY,
AND TERRY WINTERS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

This case arises out of Plaintiff's criminal conviction and incarceration for the April 21,

1992 rape of P.L.  Plaintiff filed a First Amended Complaint against Defendants City of Muncie,

Fonda King, Steve Stewart, Gordon Watters, Joseph Todd, Steve Blevins, Donald Bailey, Terry

Winters, and others, asserting fourteen counts under 42 U.S.C. § 1983 and state law.  As set forth

in more detail below, this Court should grant these Defendants' Partial Motion to Dismiss

Plaintiff's First Amended Complaint because Plaintiff's allegations fail to state a claim and/or are

otherwise barred by immunity.[1]

---

[1] Defendants move to dismiss Count I as to Defendant Officers King, Stewart, Watters, Todd, and Blevins; Count II, Count IV, Count V, Count VII, Count X, Count XI, and Count XII as to all the named Officers; and Count VIII, Count IX, Count XII, and Count XIV as to the City.  Defendants have contemporaneously filed within their Answer and Affirmative Defenses answering Count I on behalf of Defendant Officers Bailey and Winters and Counts III and VII on behalf of the named Defendant Officers.

## PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY[2]

The following represents a summary of the events that led to Plaintiff's rape and deviate

sexual conduct convictions, as found in the state court proceedings:

> In the early morning hours of April 21, 1993 [*sic*], P.L. left her apartment and walked toward a convenience store located approximately one block away. As she walked through an alley leading to the store, she was approached by Barnhouse. While riding his bicycle alongside P.L., Barnhouse asked her whether she wanted to "go party." P.L. declined, whereupon Barnhouse produced a knife, placed it against P.L.'s side and threatened to kill her. Barnhouse forced P.L to walk with him to an area behind a nearby vacant building.
>
> Once there, Barnhouse ordered P.L. to remove her slacks and lie on the ground. When P.L. refused, Barnhouse moved the knife toward P.L.'s face and said he would kill her unless she complied. Succumbing to Barnhouse's threats, P.L. removed her clothing and lay down. Barnhouse then raped P.L. and forced her to perform fellatio. After the assault, P.L. quickly dressed and began walking away from the scene. As she left, Barnhouse walked beside her warning that if she reported the rape he would kill her. Barnhouse then mounted his bicycle, circled around P.L. several times as she walked, then rode away.
>
> As soon as Barnhouse was out of sight, P.L. ran to a nearby convenience store and reported the incident to a store employee. Police were summoned, and shortly thereafter Officer Fonda King arrived on the scene. P.L. told Officer King that she had been raped and provided a description of her attacker.

[*Barnhouse v. State*, No. 18A05-9304-CR-137 (Ind. Ct. App. Oct. 21, 1993) (citations omitted),

Exhibit A, pp. 2-3].[3]   P.L. described her attacker as a white male with a marked up face, bad

complexion, and a bottom jaw that jutted out, having a bad odor, approximately her height (she is

5'9") or 5'9 or 5'10, thin built, long shoulder length brown hair, wearing light colored jeans and a

---

[2] This Court can take judicial notice of the state court proceedings discussed herein without converting this Motion to Dismiss into a Motion for Summary Judgment. *See White v. Keely*, 814 F.3d 883, 885 n. 2 (7th Cir. 2016); *Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1097 n. 1 (7th Cir. 2015); *Lennon v. City of Carmel, Indiana*, No. 1:15-cv-02072-JMS-MJD, 2016 WL 5851595, at *3 (S.D. Ind. Oct. 6, 2016); *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *see also Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Duncan v. Nelson*, 466 F.2d 939, 941 (7th Cir. 1972).

[3] The Court of Appeals decision refers to the date of the rape as occurring in 1993. The underlying criminal trial record establishes that the rape occurred on April 21, 1992.

gray sweatshirt, riding a black bicycle with handlebars that curved back, no fenders, and a chain around the seat.  [Excerpts from Transcript of Criminal Trial, *State v. Barnhouse*, 18D02-9204-CF-46 (Dec. 14-15, 1992), Exhibit B, pp. 380-81, 402-404, 412, 422].[4]

Officer King provided the following description of P.L.'s attacker in a "Be On the Lookout" bulletin over the police radio:  a white male, slim build, 5'9 to 5'10, with dark shoulder length brown hair, a mustache, an underbite, wearing a gray sweatshirt and light colored jeans, and riding a bicycle with handlebars curved back toward the rider.  [Exhibit B, pp. 422-423].

> Approximately one hour later, a police officer responding to the bulletin observed Barnhouse riding his bicycle a short distance away from where the rape occurred.  The officer detained Barnhouse and contacted Officer King.  When Officer King learned Barnhouse had been apprehended, she informed P.L. police had detained a "possible suspect" who "fit the description" of her assailant.

[Exhibit A, p. 3].  In particular, Officer King stated she was "taking [the victim] up to a location where [] some officers had a person stopped who fit the description" and she was going "to see if she could identify him as…a possible suspect."  [Transcript of Motion to Suppress Hearing, at 148, *State v. Barnhouse*, 18D02-9204-CF-46, (Dec. 3, 1992), Exhibit C, p. 148; Exhibit B, p. 425].

> Officer King then transported P.L. to Barnhouse's location.  When P.L. arrived, she saw Barnhouse standing next to three police officers and their squad cars.  P.L. immediately recognized Barnhouse and identified him as the man who assaulted her.  P.L. also recognized Barnhouse's bicycle and the knife he was carrying as those used in the attack.
>
> Barnhouse was arrested and charged with Rape and Criminal Deviate Conduct.  Prior to trial, Barnhouse moved to suppress evidence of P.L.'s pretrial identification and any in-court identification by P.L.  The trial court denied the motion, and evidence of the prior identification as well as P.L.'s in-court identification of Barnhouse was introduced at trial without objection.  A jury convicted Barnhouse as charged.

---

[4] Defendants will use the Bates numbering that is contained on the original trial transcript for all citations to the transcript in this Memorandum.

[Exhibit A, pp. 3-4]. Barnhouse appealed the convictions, arguing that the trial court erred in denying his motion to suppress identification evidence. [Exhibit A, p. 2]. The Court of Appeals affirmed the judgment finding that the identification procedure was not unduly suggestive and the pretrial and in-court identifications were properly admitted. [Exhibit A, p. 6].

Barnhouse subsequently filed and voluntarily moved to withdraw two petitions for post-conviction relief, which the court granted. [Petitions for Post-Conviction Relief, Motions to Withdraw Petitions for Post-Conviction Relief & Orders, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit D]. In 2016, Plaintiff's counsel and the State of Indiana entered a post-conviction DNA testing agreement. [Post-Conviction DNA Testing Agreement and Instructions to Testing Laboratory, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit E].

Pursuant to the DNA Testing Agreement, Bode Cellmark Forensics tested P.L.'s jeans and the rape kit. [Exhibit E, p. 1]. The testing excluded Barnhouse as the source of the semen, and as such, the parties filed a Joint Motion for New Trial. [Joint Motion for New Trial, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit F, pp. 4-5]. The court vacated Plaintiff's convictions and granted the Joint Motion for a New Trial. [Order Vacating Convictions and Granting New Trial, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit G].

The State of Indiana subsequently filed a Motion to Dismiss, stating that "the State is unable to scientifically determine whether the sperm from the unknown male was deposited at a point in time prior to the rape or during the rape itself," but the semen tested did not belong to Plaintiff. [State of Indiana's Motion to Dismiss, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit H, ¶ 7]. The State did not concede that Plaintiff is innocent of the rape of P.L. [Exhibit H]. On May 10, 2017, the Court granted the State's Motion to Dismiss. [Order on Motion to Dismiss, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit I]. This cause of action followed.

**LEGAL STANDARD**

A pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A pleading that contains only a "the-defendant-unlawfully-harmed-me accusation" is not sufficient to meet the requirements of FRCP 8, but the Rule does not require detailed factual allegations either. *Id*. at 678. Rather, what is required is sufficient factual matter, accepted as true, that "state[s] a claim to relief that is plausible on its face." *Id*. A pleading is not sufficient if it merely provides "'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action….'" *Id*.

Thus, to survive a motion to dismiss for failure to state a claim, the complaint must "provide the grounds of his entitlement to relief" by stating "factual allegations [that are] enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Despite the fact that the court must accept the Plaintiff's factual allegations as true in reviewing a motion to dismiss, the court is not required "to accept as true a legal conclusion couched as a factual allegation." *Id*. If the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*.

**ARGUMENT**

**I.    PLAINTIFF FAILS TO STATE A FABRICATION-OF-EVIDENCE CLAIM AGAINST DEFENDANTS KING, STEWART, WATTERS, TODD, AND BLEVINS IN COUNT I.**

Plaintiff alleges that Defendant Sergeants Donald Bailey and Terry Winters interrogated Plaintiff at the police station. [DE #73, ¶ 47]. Plaintiff alleges that at the police station he truthfully denied any involvement in the rape, but the Police Defendants fabricated the spontaneous

incriminating statements that:  "he'd just been partying with a girl named 'Tric;' all he did was kiss her; he shouldn't carry a knife; and he didn't pull a knife on anybody."  [DE #73, ¶¶ 47, 49-50].[5]  The Court should dismiss Count I of the First Amended Complaint as to Defendant Officers King, Stewart, Watters, Todd, and Blevins for lack of personal involvement in the alleged fabrication of evidence.

Liability will be imposed on an official under Section 1983 "who subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012).  However, individual liability under Section 1983 requires that the public official defendant was personally involved in the alleged constitutional deprivation.  *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).  A plaintiff must establish a causal connection between the officials sued and the alleged misconduct. *Id*.

Here, Plaintiff fails to allege any facts that suggest that Defendants King, Stewart, Watters, Todd, or Blevins were personally involved in the alleged fabrication of evidence.  Instead, the only allegations that could possibly be construed so as to apply to these Defendants are conclusory and therefore, cannot establish the personal involvement required under Section 1983.  Thus, the Court should dismiss Count I of the First Amended Complaint as to Defendants King, Stewart, Watters, Todd, and Blevins.

---

[5]  Throughout his First Amended Complaint, Plaintiff pleads that he is innocent of raping P.L.  Whether Plaintiff committed that crime is not at issue for the purposes of this Motion, instead the issue is whether Plaintiff has sufficiently pled the claims asserted in his First Amended Complaint.  As discussed throughout this Memorandum, Plaintiff fails to do so.  Defendants expect the evidence in this case to show that Plaintiff did commit the crimes for which he was charged and convicted.

II.   **PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM IN COUNT II FOR ALLEGED *BRADY* VIOLATIONS BECAUSE EXCULPATORY EVIDENCE WAS NOT CONCEALED FROM PLAINTIFF AND THE DUTY TO DISCLOSE THE IDENTIFICATION PROCEDURE USED WAS NOT CLEARLY ESTABLISHED.**

Plaintiff alleges that Defendants failed to disclose to both the prosecutor and the defense the facts and circumstances surrounding the allegedly suggestive identification procedure.   [DE #73, ¶ 71].   On the face of the First Amended Complaint, Plaintiff fails to establish a *Brady* claim and the Defendant Officers are otherwise entitled to qualified immunity.   Therefore, this Court should dismiss Count II of the First Amended Complaint.

   a.   **Plaintiff Fails to State a *Brady* Claim Because Exculpatory Evidence Was Not Concealed from Plaintiff.**

To establish that the Defendant Officers deprived him of his due process right to a fair trial by suppressing exculpatory evidence, Plaintiff must prove that: "(1) the suppressed evidence is either exculpatory or impeaching and is favorable to the accused; (2) the government, either willfully or inadvertently, suppressed the evidence; and (3) the suppressed evidence resulted in prejudice."   *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014).   The *Brady* rule applies in situations in which information is discovered after trial that is known to the prosecutor, but unknown to the defense.   *U.S. v. Agurs*, 427 U.S. 97, 103 (1976).

Evidence is suppressed if the plaintiff can show that:   "(1) the state failed to disclose known evidence before it was too late for a defendant to make use of the evidence; and (2) the evidence was not otherwise available to a defendant through exercise of reasonable diligence."   *Petty*, 754 F.3d at 423.   Thus, "evidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant."   *Avery v. City of Chicago*, 847 F.3d 433, 443 (7th Cir. 2017).   It is not a matter of "whether the City disclosed the potentially exculpatory information at all, but whether [the defendant] had sufficient time to use any exculpatory information revealed to him during trial."   *Petty*, 754 F.3d at 423.   Further, *Brady* cannot serve as the basis of a cause of action

7

against police officers for failing to disclose the circumstances surrounding a coerced confession to a prosecutor. *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1029 (7th Cir. 2006).

Here, Plaintiff's *Brady* claim fails. Because Plaintiff was present during the identification, all the facts and circumstances of the identification were already known to the Plaintiff, thereby precluding a *Brady* claim. *Avery*, 847 F.3d at 443. Plaintiff in fact moved to suppress P.L.'s identification of Plaintiff as the man who raped her, asserting the same issues that he asserts in his First Amended Complaint. [Motion to Suppress, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit J].

In particular, Plaintiff argued in his the Motion to Suppress that "all testimony regarding identification should be excluded at trial because the pre-trial identification procedure was tainted by its agent[s] of the State," as "the defendant was arrested and held several miles from the scene of the crime," and "the agents of the State allowed the alleged victim to view the defendant by himself and without any benefit of any safeguards." [Exhibit J].

At the hearing on Plaintiff's Motion to Suppress, Officer King testified as to the facts and circumstances surrounding the rape, the statement she made to the victim before the identification, and the identification procedure. [Exhibit C, pp. 139-150]. The hearing provided Plaintiff's defense counsel the opportunity to cross-examine Officer King concerning any statements that she made to the victim, the identification procedure, and the victim's description of her assailant, and, more importantly, Plaintiff's criminal defense attorney did in fact cross-examine Officer King. [Exhibit C, pp. 139-150]. Plaintiff did not call P.L. to testify at the suppression hearing. [Exhibit C]. The Court denied Plaintiff's Motion to Suppress, holding that:

> The indication from [Officer King's] testimony is that [the identification] did occur shortly after the alleged incident, occurred within a...small distance, a couple of miles of the alleged crime scene. The police comment was not one such as we have the person who committed the offense. There's a person who may or may not be. Consequently, I'll find that at this particular time that there's not sufficient evidence here that this is an unduly

> suggestive, does not constitute an unduly suggestive individual line-up.  The
> procedure itself is not sufficient to in and of itself taint beyond redemption
> the testimony of the alleged victim.

[Exhibit C, pp. 157-158].

Armed with the facts and circumstances of the allegedly suggestive identification and the Court's reasoning for the denial of the Motion to Suppress, Plaintiff had the opportunity to explore these topics further, both before and at trial.  *See Petty*, 754 F.3d at 423-24 (finding that dismissal of the *Brady* claim was appropriate because the defendant was aware of the alleged misconduct related to the coercive tactics as he tried to suppress the evidence stemming from the tactics and could have explored the topic at trial).  In fact, Plaintiff had the opportunity to depose P.L. in order to solicit testimony that he could use to cast doubt on Plaintiff's identification and to learn any additional information that was unknown to him.  Plaintiff did not depose the victim, but did cross-examine not only the victim, but also some of the Defendant Officers at trial concerning the victim's description of her assailant and the identification procedure.  [Exhibit B].

It is important to note that Plaintiff did not object to P.L.'s identification of him as the man who raped her at trial, despite the knowledge of the facts and circumstances of the identification procedure, obtained through Plaintiff's own experiences and the Motion to Suppress hearing.  [Exhibit A, p. 4; Exhibit B, pp. 374-419].  Even so, after Plaintiff was convicted, he sought an appeal with the Indiana Court of Appeals, where the Court addressed the merits of the allegedly suggestive identification procedure, despite the waiver of said argument, on the same evidence as was offered at trial and again found the identification to have been proper.  [Exhibit A, pp. 2-6]. As such, Plaintiff did not discover any additional evidence that was known to the prosecutor, taking Plaintiff's claims out of the scope of *Brady*.  *See Agurs*, 427 U.S. at 103.  Regardless, it is clear that Plaintiff was either aware of all of the facts and circumstances of the identification procedure, both through his own knowledge and recollection and through the testimony of the Defendant

Officers at the Motion to Suppress hearing and at trial, or he could have obtained the information through reasonable diligence.

In *Sornberger*, the failure to disclose the circumstances of a coerced confession to the prosecutor did not amount to a *Brady* violation. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006). In particular, the plaintiff alleged that the police officer-defendants failed to disclose the circumstances of her interrogation to the prosecutor, which she alleged resulted in a coerced confession. *Id*. However, the Court noted that the plaintiff was aware of the interrogation circumstances and what allegedly occurred and therefore, "was not deprived of any evidence held by the police or the prosecutor that would have helped her question the officers' version of the events in court." *Id*. The Court therefore held that the failure to disclose the circumstances of an allegedly coerced confession did not support a *Brady* claim and the plaintiff's claim failed. *Id*. Just as the plaintiff in *Sornberger* knew the circumstances of her interrogation, Plaintiff knew of the circumstances of the identification procedure and what allegedly occurred during the identification. Thus, following the logic as applied in *Sornberger*, the Defendant Officers' alleged failure to disclose the facts and circumstances of the identification procedure cannot serve as a basis of a *Brady* claim as Plaintiff was present and aware of all that allegedly occurred during the identification. Thus, Plaintiff's claim for deprivation of his right to procedural due process based on the alleged violations of *Brady* fails as a matter of law and this Court should dismiss Count II of Plaintiff's First Amended Complaint.

> **b. The Duty to Disclose the Circumstances of an Identification Procedure Was Not Clearly Established and the Defendant Officers Are Entitled to Qualified Immunity.**

Alternatively, the Defendant Officers are entitled to qualified immunity on Plaintiff's *Brady* claim. Police officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established

10

at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  The Court has the discretion to address either prong if it will be dispositive of the case.  *Pearson v. Callahan*, 555 U.S. 223, 236-43 (2009).  The Supreme Court detailed the "clearly established" analysis as follows:

> "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what [they are] doing is unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate.  This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that every reasonable official would know.
>
> The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before [the officer].  The rule's contours must be so well defined that it is clear to a reasonable officer that [their] conduct was unlawful in the situation [] confronted.  This requires a high degree of specificity.  We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.  A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established.

*Wesby*, 138 S. Ct. at 589-90 (internal citations and quotation marks omitted).  It is Plaintiff's burden to demonstrate that the right at issue was clearly established.  *Perry v. Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000).

Here, the Defendant Officers did not violate Plaintiff's constitutional right of due process as it relates to the alleged *Brady* violations, and therefore, are entitled to qualified immunity. However, even if the Court finds that the First Amended Complaint plausibly suggests that the Defendant Officers suppressed exculpatory evidence, they are still entitled to qualified immunity

because it was not clearly established at the time of the Defendant Officers' actions that they had a responsibility under *Brady* to disclose the identification procedure used.

Plaintiff alleges that the Defendant Officers failed to disclose exculpatory evidence from the Plaintiff and the prosecution that led to his conviction, thereby supporting his *Brady* violation claim. [DE #73, ¶ 110]. However, Plaintiff's characterization of the right at issue is too broad, as discussed in *Carvajal v. Dominguez.* 542 F.3d 561, 569 (7th Cir. 2008). The question at issue here for qualified immunity purposes is not whether it was clearly established that exculpatory evidence must be disclosed, as this characterization of the standard was expressly rejected in *Carvajal* as not only being too general, but also because it assumed the result. *Id.*

Rather, the constitutional right at issue must be identified at a more specific level, as required under *Carvajal* and *Wesby.* Specifically, the Court must consider whether it was clearly established that police officers had a duty to disclose the identification procedure used to the prosecutor. These Defendants are unaware of any decision by the Seventh Circuit or any of the other Circuits that would have clearly established such an obligation under *Brady* in 1992 to disclose the facts and circumstances of an identification procedure used. As such, the Court should dismiss Count II of the First Amended Complaint because Plaintiff cannot demonstrate that this duty was clearly established and the Defendant Officers are entitled to qualified immunity.

### III. PLAINTIFF'S PROCEDURAL DUE PROCESS MALICIOUS PROSECUTION CLAIM IN COUNT IV FAILS BECAUSE IT IS NOT COGNIZABLE UNDER SECTION 1983 AND A RIGHT TO BE FREE FROM PROSECUTION WITHOUT PROBABLE CAUSE WAS NOT CLEARLY ESTABLISHED.

Plaintiff alleges that "Defendants falsely accused Plaintiff of criminal activity and caused Plaintiff to be improperly subjected to criminal prosecution for which there was no probable cause," which in turn violated Plaintiff's right to procedural due process guaranteed by the Fourteenth Amendment. [DE #73, ¶¶ 125-26]. While Plaintiff does not use the term "malicious prosecution" in Count IV of the First Amended Complaint, Plaintiff's allegations amount to a

malicious prosecution claim under Section 1983.  *See* DE #73, ¶ 125 ("Criminal prosecution was commenced and continued maliciously….").  Such a claim is not cognizable under Section 1983 and the Defendant Officers are otherwise entitled to qualified immunity.

### a.   Malicious Prosecution Is Not Cognizable under Section 1983.

Defendants recognize that the Seventh Circuit in *Julian v. Hanna* authorized claims against Indiana police officers under Section 1983 for malicious prosecution.  *Julian*, 732 F.3d 842, 847 (7th Cir. 2013).  Malicious prosecution claims, however, are wholly inconsistent with the Fourth Amendment's objective-reasonableness standard and are duplicative of pre-trial Fourth Amendment claims, and make little sense in the context of due process, which already protects criminal defendants' constitutional right to a fair trial.  *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 924-26 (2017) (*Manuel I*) (Alito, J., dissenting).  Defendants recognize the binding effect of *Julian*, but wish to preserve this issue for appeal.

### b.   The Right to Be Free From Prosecution Without Probable Cause Was Not Clearly Established and the Defendant Officers Are Entitled to Qualified Immunity.

Alternatively, the Defendant Officers are entitled to qualified immunity because it was not clearly established that a due process right exists to be free from prosecution with malice or without probable cause, as the law applicable to Section 1983 malicious prosecution claims has never been clearly defined.  In fact, the law as it stands today does not clearly establish the right to be free from prosecution without probable cause.  *See Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) (*Manuel II*).  The *Manuel II* Court explicitly stated that "[t]here is no such thing as a constitutional right not to be prosecuted without probable cause."  *Id.* (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)).  Further, the Supreme Court has never held definitively that Section 1983 encompasses claims of malicious prosecution.  *See Campbell v. Brummett*, 504 U.S. 965, 965 (1992) (White, J., dissenting from denial of cert) ("The questions presented concern

whether [Section 1983] provides a cause of action for malicious prosecution and, if so, when the cause of action accrues."); *Manuel II*, 137 S. Ct. at 923 (Alito, J., dissenting).  Given that the current law does not clearly establish such a right, it follows that this right did not exist and was not clearly established in 1992.

It is sufficient that the Supreme Court has never held that Section 1983 encompasses malicious prosecution claims for qualified immunity to apply, regardless of any pre-existing circuit precedent.  *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[a]ssuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity").  Furthermore, it was not until the Seventh Circuit's 2013 opinion of *Julian v. Hanna* that it was established in this Circuit that police officers in Indiana could be subject to suit for malicious prosecution under Section 1983.  *See Julian*, 732 F.3d at 847.  Prior to *Julian*, a police officer in Indiana could not be subjected to a claim for malicious prosecution under Section 1983.  *See id*.  Even the circuit precedent upon which the Seventh Circuit relied in *Julian* was issued subsequent to the prosecution of Plaintiff.  *See id*. at 845.

Moreover, at the time of Plaintiff's conviction, the Seventh Circuit expressed uncertainty that such a right even existed and explicitly stated that "whether or not the right to be free from prosecution without probable cause exists, it does not appear to be clearly established." *Kompare v. Stein*, 801 F.2d 883, 891 (7th Cir. 1986).  The court explained that qualified immunity would protect the defendant on such a claim.  *Id*.  Further, the Supreme Court had not recognized at the time of Plaintiff's prosecution, and still has not recognized today, that the Constitution provides a right not to be prosecuted maliciously or without probable cause.  Plaintiff seeks to rely upon changes in circuit precedent occurring long after Plaintiff's prosecution to suggest that the Defendant Officers may be liable for maliciously prosecuting him, which qualified immunity forbids.  As such, Plaintiff will not be able to establish that the right to be free from prosecution

14

with malice or without probable cause was clearly established in 1992.  Therefore, the Defendant

Officers are entitled to qualified immunity on Count IV of the First Amended Complaint.

**IV.   PLAINTIFF'S CLAIM OF LIBERTY DEPRIVATION WITHOUT PROBABLE CAUSE IN COUNT V IS TIME-BARRED AND OTHERWISE FAILS TO STATE A CLAIM.**

Plaintiff alleges that he was detained and imprisoned without probable cause both prior to

trial and after his conviction.  [DE #73, ¶ 131].  Plaintiff's allegations essentially amount to

wrongful pretrial detention.  As such, the Fourth Amendment applies.  *Manuel I*, 137 S. Ct. at 913.

Count V of Plaintiff's First Amended Complaint should be dismissed for several reasons:  (1) the

claims are time-barred; (2) Plaintiff fails to state a claim upon which relief may be granted; and

(3) the Defendant Officers are entitled to qualified immunity.

**a.   Plaintiff's Liberty Deprivation Claims Are Time-Barred.**

The state statute of limitations for a personal injury action will apply to a Section 1983

claim.  *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).  As such, in Indiana, a Section 1983

claim has a two year statute of limitations.  *Behavioral Institute of Ind., LLC v. City of Hobart*

*Common Council*, 406 F.3d 926, 929 (7th Cir. 2005).  Regardless of whether Plaintiff's liberty

deprivation without probable cause claim related to his pretrial detention is characterized as a false

arrest claim or as a deprivation of liberty claim, Plaintiff's claims are time-barred.

First, to the extent that Plaintiff's allegations establish a false arrest claim under the Fourth

Amendment, Plaintiff's claim is untimely.  A false arrest claim begins to accrue at the point of

issuance of process or arraignment.  *Wallace v. Kato*, 549 U.S. 384, 390 (2007).  Plaintiff was

arraigned on April 23, 1992, and therefore, Plaintiff's false arrest claim under the Fourth

Amendment expired on April 23, 1994, making Plaintiff's claim untimely.  [April 23, 1992 Docket

Entry, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit K].

15

Second, to the extent that Plaintiff's allegations establish a deprivation of liberty as it applies to the time detained after the legal process commenced, such claim is also time-barred. Any post-legal process pretrial detention is still governed by the Fourth Amendment. *Manuel I*, 137 S. Ct. at 919. In particular, "if the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id*. When a plaintiff alleges that the process received failed to establish that which the Fourth Amendment requires for pretrial detention—probable cause—then any legal process administered does not expunge a Fourth Amendment claim. *Id*. at 919-20. Further, "the Framers drafted the Fourth Amendment to address the matters of *pretrial* deprivations of liberty, and the Amendment thus provides standards and procedures for the detention of suspects *pending trial*." *Id*. at 920 n.8. (internal citations and quotations omitted) (quoting *Albright v. Oliver*, 510 U.S. 266, 274 (1994); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975)). Once a trial occurs, "the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id*.

Here, Plaintiff's liberty deprivation without probable cause claim addresses the time period after the legal process began until his conviction. This pretrial detention falls under the scope of the Fourth Amendment, as held in *Manuel I*.[6] *See id*. at 919. As a result, the two year statute of limitations also applies. In this instance, the seizure under the Fourth Amendment ended the date that Plaintiff was convicted, December 15, 1992. [Order, *State v. Barnhouse*, 18D02-9204-CF-46, Exhibit L]. Therefore, Plaintiff's liberty deprivation without probable clause claim expired on December 15, 1994, and as such, is time-barred.

---

[6] Defendants recognize that the Seventh Circuit in *Manuel II* held that the plaintiff's detention without probable cause claim accrued when he was released from custody. *Manuel II*, 903 F.3d at 669. However, in *Manuel II*, the plaintiff was not convicted and therefore, any attempt to use *Manuel II*'s holding to apply to these facts is unavailing. *See id*.

16

### b.  Probable Cause Existed to Believe that Plaintiff Raped P.L.

An individual has the right to be secure from unreasonable seizures under the Fourth Amendment.  *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (quoting U.S. Const. amend. IV).  If a public official restrains a person's "movement such that he is not free to leave," the person has been seized.  *Id*. (quoting Brendlin v. California, 551 U.S. 249, 254-55 (2007)).  A seizure under the Fourth Amendment is "reasonable only if based on probable cause to believe that the individual has committed a crime."  *Id*.

If "at the time of the arrest, the facts and circumstances within the officer's knowledge…are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," probable cause is said to exist.  *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012).  Only a probability or substantial chance of criminal activity is required, not that criminal activity is more likely than not to have occurred.  *Id*.  An officer is entitled to rely on a victim's identification of the perpetrator in making a probable cause determination.  *Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015).  An issue arises if a reasonable officer would have known that the person making the identification was acting out of malice or pursuant to a grudge.  *Id*.

Here, probable cause was established through P.L.'s identification of Plaintiff as the man who raped her.  After Plaintiff was stopped by the Defendant Officers, the victim arrived on the scene and identified Plaintiff as her rapist.  [DE #73, ¶ 43].  Plaintiff alleges no facts plausibly suggesting that the victim made the identification out of malice or because of a grudge or the Defendant Officers' knowledge thereof.  As a result, the Defendant Officers were entitled to rely on P.L.'s identification of Plaintiff.  The objectively reliable identification establishes the necessary probable cause required, notwithstanding Plaintiff's allegations that the incriminating statements were fabricated.  *See Cairel v. Alderden*, 821 F.3d 823, 834-35 (7th Cir. 2016) (finding

that probable cause existed at the time the criminal complaint was filed); *Aleman v. Village of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011) ("Villanueva cannot be said to have lacked probable cause in preparing the charge of aggravated battery merely because he based the charge in part on the worthless 'confession' that he had extracted from Aleman."); *Nugent v. Hayes*, 88 F. Supp. 2d 862, 869 (N.D. Ill. 2000) ("Even excluding all of the evidence that Mr. Nugent claims is tainted or concocted and including all of the evidence that Mr. Nugent believes is exculpatory, the remaining evidence and testimony establishes probable cause to believe that Mr. Nugent committed murder.").  Because probable cause existed to believe that Plaintiff committed the rape, Plaintiff's claims for pre-trial detention without probable cause fail.

### c. It Was Not Clearly Established that Detaining Plaintiff Would Be Unconstitutional and the Defendant Officers Are Entitled to Qualified Immunity.

Alternatively, the Defendant Officers are entitled to qualified immunity because it was not clearly established that a right to be from pretrial detention absent probable cause existed until the Supreme Court recognized same in *Manuel I.  See Manuel I*, 137 S. Ct. at 920.  It follows that, at the time of Plaintiff's pretrial detention in 1992, it was not clearly established that Plaintiff had a right to be free from pretrial detention without probable cause.

Further, it was objectively reasonable for the Defendant Officers to have believed that they had probable cause.  As mentioned above, it was not clearly established that the Defendant Officers could not rely on P.L.'s identification of Plaintiff as her attacker in forming probable cause, even if the identification was performed under the alleged suggestive circumstances.  Plaintiff will be unable to fulfill his burden to present any precedent where a similar witness identification was unconstitutionally suggestive and a violation of a criminal defendant's right to a fair trial.  Taking these components into account, it was not clearly established that the Defendant Officers' conduct in making a probable cause determination was clearly prohibited.  As such, the Defendant Officers are entitled to qualified immunity for Count V of the First Amended Complaint.

**V.   PLAINTIFF'S FAILS TO STATE A CLAIM IN COUNT VII FOR FAILURE TO INTERVENE, AND THESE DEFENDANTS ARE OTHERWISE ENTITLED TO QUALIFIED IMMUNITY.**

Plaintiff alleges that "during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." [DE #73, ¶ 145]. These allegations amount to a failure to intervene claim under Section 1983. This claim fails because the Defendant Officers King, Stewart, Watters, Todd, and Blevins did not have a realistic opportunity to intervene in the alleged fabrication of evidence and the Defendant Officers are otherwise entitled to qualified immunity. Therefore, this Court should dismiss Count VII of Plaintiff's First Amended Complaint.

**a.   Plaintiff Fails to State a Claim for Failure to Intervene in any Alleged Deprivation of Plaintiff's Constitutional Rights.**

It is axiomatic that individual liability under Section 1983 is based upon personal involvement. *E.g.*, *Colbert*, 851 F.3d at 657. For this reason, there is no vicarious liability under the statute. *See Monell v. Dept. of Soc. Svcs. of City of New York*, 436 U.S. 658, 692 (1978). However, the Seventh Circuit recognizes certain, limited circumstances where a person may be considered sufficiently personally involved to be responsible for the unconstitutional actions of another person. One such circumstance is where a public official fails to intervene against a constitutional violation committed by another public official, despite having an opportunity to do so. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

Plaintiff's failure-to-intervene theory fails because a public official cannot be liable for another person's constitutional violations on this theory if the public official had no ability to compel the other person to not violate the plaintiff's constitutional rights. *Hoffman v. Knoebel*, 894 F.3d 836, 842-43 (7th Cir. 2018). A police officer cannot direct a prosecuting attorney to take or to refrain from taking any action related to the prosecution of a criminal defendant, such as what

19

evidence to use and which witnesses to call.  In addition, the Defendant Officers did not have an opportunity to intervene to prevent the prosecutor from using the allegedly false evidence to deprive Plaintiff of his liberty or right to fair trial.  Therefore, the Defendant Officers could not have prevented the prosecutor from depriving Plaintiff of his liberty or his right to a fair trial.  *Cf. Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n.6 (N.D. Ill. 2009) (rejecting a failure-to-intervene theory against the prosecutor because prosecutors do not "have command of police operations").

To the extent that Plaintiff may suggest that the Defendant Officers should have blown the whistle on the use of allegedly-false evidence against Plaintiff, this argument would also fail.  The Constitution does not impose a "general duty to expose wrongdoing. . . ."  *Hoffman*, 894 F.3d at 842-43.  Further, to the extent that Plaintiff alleges that the Defendant Officers failed to intervene to prevent Plaintiff from being arrested or detained without probable cause, this claim is foreclosed by the two year statute of limitations, as discussed above.

In addition, to the extent that Plaintiff alleges that Defendant Officers King, Stewart, Watters, Todd, and Blevins failed to intervene to prevent Defendant Officers Bailey and Winters from allegedly fabricating evidence, the First Amended Complaint is bereft of facts to plausibly suggest that they had a realistic opportunity to intervene.  The First Amended Complaint does not suggest that these Defendants were present during the alleged fabrication of the incriminating statements.  Therefore, these Defendants did not have a reasonable opportunity to intervene in the alleged deprivation of Plaintiff's constitutional rights and the failure to intervene claim against these Defendants should be dismissed.

### b. No Constitutional Duty to Intervene Was Clearly Established and the Defendant Officers Are Entitled to Qualified Immunity.

The Defendant Officers are still entitled to qualified immunity for the failure to intervene on Counts II, IV, and V of the First Amended Complaint because these rights were not clearly established.  As discussed above, it was not and is not clearly established that: (1) the Defendant

20

Officers had a responsibility under *Brady* to disclose the identification procedure used (Count II); (2) a due process right not to be prosecuted without probable cause existed (Count IV); and (3) a due process right to be free from pretrial detention without probable cause existed (Count V).

As the law surrounding the aforementioned areas was not clearly established, it follows that the necessity to intervene to prevent their related alleged constitutional deprivations was not clearly established. Further, the Supreme Court has never endorsed a Section 1983 failure-to-intervene theory of liability for another public official's constitutional violations. Nor has the Supreme Court held that circuit precedent can create clearly-established law. *See Emmons*, 139 S. Ct. at 503. For this reason alone, it could not have been clearly established in 1992 that a public official violates the Constitution by failing to prevent *another* public official from violating the Constitution.

Even assuming that circuit precedent can create clearly established law, circuit precedent did not clearly establish in 1992 that a police officer had a constitutional duty to prevent a person from being detained without probable cause, to prevent a person from being prosecuted with malice or without probable cause, or to prevent a prosecuting attorney from using fabricated evidence to detain a criminal defendant or using it against a criminal defendant at trial. Therefore, this Court should dismiss Count VII of the First Amended Complaint as to these Defendants for the alleged failure to intervene in the constitutional deprivations alleged.

**VI.    COUNT VIII FAILS TO STATE A CLAIM AGAINST THE CITY OF MUNCIE FOR MUNICIPAL LIABILITY UNDER SECTION 1983.**

Plaintiff asserts a generic *Monell* count in Count VIII of the First Amended Complaint for municipal liability under Section 1983. [DE #73, ¶¶ 149-53]. Under Rule 8, a plaintiff cannot merely recite the elements of a *Monell* claim and hope to survive a motion to dismiss. Plaintiff fails to allege any facts from which municipal liability under *Monell* could reasonably be inferred.

Therefore, this claim fails and this Court should dismiss Count VIII of the First Amended Complaint.

It is axiomatic that there is no *respondeat superior* liability under Section 1983. *See Monell*, 436 U.S. at 691-95. In order for Plaintiff to prevail on his *Monell* claim, he must plead and prove not only that his rights were violated, but that the City of Muncie was the "moving force" behind Plaintiff's constitutional injury. *Id.*; *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The "moving force" requirement may be demonstrated through (1) the existence of an express municipal policy that caused the alleged constitutional violation, (2) that the person who committed the constitutional tort was an official with final policymaking authority, or (3) the existence of a pattern, practice, or custom that was so widespread or persistent that it rises to the level of a municipal policy. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). A plaintiff pursuing a claim of municipal liability for a widespread practice must allege more than that his or her constitutional rights were violated; rather, "a series of violations must be presented to lay the premise for a widespread practice claim under *Monell*." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (internal quotation marks omitted).

Plaintiff does not allege, nor could he plausibly allege, that any express municipal policy or action of a final policymaking official caused the alleged deprivation of his constitutional rights. Rather, Plaintiff seeks to hold the City of Muncie liable for "*de facto* policies" that he alleges caused the deprivation of his constitutional rights. [DE #73, ¶ 151]. However, Plaintiff must actually allege facts supporting an inference of municipal liability based upon widespread practices; boilerplate recitations of the elements of the cause of action "will not do." *Twombly*, 550 U.S. at 555. At the pleadings stage, "a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill*, 850 F.3d at 344.

22

Plaintiff fails to allege any facts from which it could reasonably be inferred that a widespread practice of the City of Muncie was the moving force behind any alleged deprivation of his constitutional rights. Plaintiff presents no more than boilerplate recitations of the elements of the claim. [DE #73, ¶¶ 95-101, 150-53]. These *Monell* boilerplate allegations are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678 (holding that similar "'formulaic recitation of the elements' of a constitutional discrimination claim" failed to plausibly allege a *Bivens* claim). There are no *facts* pled in the First Amended Complaint supporting Plaintiff's boilerplate allegations that the City of Muncie had any such widespread municipal policies. In addition, Plaintiff's allegations amount to at most a single unconstitutional incident, which is insufficient to impose *Monell* liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (quoting *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007)).

Allowing Plaintiff to rest his pleadings on "boilerplate [*Monell*] allegations, and proceed to discovery in the hope of turning up some evidence to support the 'claims' made" would be "tantamount to allowing suit to be filed on a *respondeat superior* basis." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). Plaintiff's allegations fail to nudge his *Monell* claim "across the line from conceivable to plausible," and therefore, this Court should dismiss Count VIII of Plaintiff's First Amended Complaint. *Twombly*, 550 U.S. at 570.

## VII. COUNT IX FAILS TO PLAUSIBLY SUGGEST ENTITLEMENT TO RELIEF AGAINST THE CITY OF MUNCIE PURSUANT TO THE REHABILITATION ACT.

Plaintiff alleges that the Police Defendants intentionally or with deliberate indifference discriminated against him by reason of his serious mental impairment and allegedly exploited his mental impairment by fabricating the inculpatory statements linking Plaintiff to the crime. [DE #73, ¶¶ 154-59]. Plaintiff's claim under the Rehabilitation Act amounts to a vicarious liability claim, which fails as Plaintiff cannot plausibly suggest entitlement to relief against the City of

Muncie under the Act.   Therefore, this Court should dismiss Count IX of the First Amended Complaint.

Claims for money damages based on vicarious liability are not cognizable under the Rehabilitation Act.   In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 288 (1998), the Supreme Court held that Title IX does not "allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice."   Subsequently, courts have held that the same limitation applies to claims under the Rehabilitation Act.   *See Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012) ("*Gebser* provides the correct standard [in a Rehabilitation Act case]").   This rule is consistent with Seventh Circuit precedent. The year before the Supreme Court decided *Gebser*, the Seventh Circuit refused to apply agency principles in a Title IX case because that statute prohibits discrimination by "programs or activities."   *Smith v. Metro. Sch. Dist.*, 128 F.3d 1014, 1022-28 (7th Cir. 1997).   The same logic applies here, because the Rehabilitation Act operates similarly to Title IX.   *See* 29 U.S.C. § 794 (providing that the Rehabilitation Act applies to "programs or activities").   Thus, Plaintiff cannot recover based on a vicarious liability theory, and, therefore, cannot state a claim for damages against the City of Muncie, as the First Amended Complaint lacks any factual allegations to suggest that the City of Muncie directly discriminated against Plaintiff upon the sole basis of a disability.   Therefore, this Court should dismiss Count IX of the First Amended Complaint.

## VIII.   PLAINTIFF'S STATE LAW CLAIMS IN COUNTS X THROUGH XIV ARE BARRED UNDER THE INDIANA TORT CLAIMS ACT OR THIS COURT OTHERWISE LACKS SUBJECT MATTER JURISDICTION.

The Indiana Tort Claims Act (ITCA) provides immunity to governmental entities and governmental employees acting within the scope of their employment in several different situations.   I.C. § 34-13-3-3.   Plaintiff asserts five state law claims against these Defendants:   (1) intentional infliction of emotional distress (IIED); (2) malicious prosecution; (3) *respondeat*

*superior*; (4) civil conspiracy; and (5) indemnification.  [DE #73, ¶¶ 160-183].  This Court should dismiss Counts X through XIV of Plaintiff's First Amended Complaint, as either the ITCA bars the claims or the Court lacks subject matter jurisdiction.

> ### a.   The Defendant Officers Cannot Be Held Individually Liable for the State Law Claims in Counts X, XI, and XIII.

Plaintiff asserts Counts X (IIED), XI (malicious prosecution), and XIII (civil conspiracy) against the Defendant Officers.  To the extent that these claims are intended to be asserted against the Defendant Officers in their individual capacities, such claims are barred under the Indiana Tort Claims Act.

Under I.C. § 34-13-3-5(b), a plaintiff cannot "sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment."  *Bushong v. Willamson*, 790 N.E.2d 467, 471 (Ind. 2003).  A complaint that includes allegations of an employee's actions within the scope of employment that led to the cause of action is "an immediate and early indication that the employee is not personally liable."  *Id*. at 472.  Plaintiff specifically alleges that the actions of the Defendant Officers were "undertaken within the scope of Defendants' employment".   [DE #73, ¶¶ 164, 171, 175].  As such, the aforementioned claims are barred under I.C. § 34-13-3-5(b) and a motion to dismiss is the proper course of action.   *Id*.   Therefore, this Court should dismiss the Defendant Officers in their individual capacities from Counts X, XI, and XIII of the First Amended Complaint.

> ### b.   The Defendant Officers are Immune for Plaintiff's Intentional Infliction of Emotional Distress Claim in Count X.

Plaintiff asserts an intentional infliction of emotional distress (IIED) claim against the Defendant Officers, alleging that their actions, which were taken within the scope of their employment, were extreme and outrageous and done intentionally or with knowledge of a high probability that said conduct would cause severe emotional distress to Plaintiff.  [DE #73, ¶¶ 160-

64].  Plaintiff's IIED claim should be dismissed because the Defendant Officers are immune under the Indiana Tort Claims Act (ITCA).

Under the ITCA, a governmental "employee acting within the scope of the employee's employment is not liable if a loss results from…the adoption and enforcement of…a law…unless the act of enforcement constitutes false arrest or false imprisonment."  I.C. § 34-13-3-3(8).  While ITCA immunity will not apply to claims of false arrest, "'add on' claims such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct."  *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1032 (N.D. Ind. 2014) (quoting *Chapman v. Indiana*, 2014 WL 1831161, at *4 (N.D. Ind. May 8, 2014)).  Plaintiff alleges that the Defendant Officers' actions were taken within the scope of their employment, thereby placing this claim under the scope of the ITCA.  As this IIED claims is clearly an add-on claim that is alleged to have been a product of improper conduct, it cannot survive.

Further, the ITCA provides further immunity for the Defendant Officers under Section 3(6).  In particular, a governmental "employee acting within the scope of the employee's employment is not liable if a loss results from…the initiation of a judicial or administrative proceeding."  I.C. § 34-13-3-3(6).  Thus, the Defendant Officers are immune for the emotional distress that resulted from the decision to file charges against and prosecute Plaintiff.

In addition, Section 3(10) provides additional protection for the Defendant Officers.  In particular, a governmental "employee acting within the scope of the employee's employment is not liable if a loss results from…the act or omission of anyone other than the governmental entity or the governmental entity's employee."  I.C. § 34-13-3-3(10).  Here, the Defendant Officers are entitled to immunity for any losses that resulted from the actions of anyone other than the governmental entity.  In particular, the Defendant Officers are immune for the prosecutor's decision to file charges, Plaintiff's pretrial detention, Plaintiff's convictions, and the confinement

that followed pursuant to said convictions.  Therefore, this Court should dismiss Count X of the First Amended Complaint based on ITCA immunity.

### c.  The Defendant Officers are Immune for Plaintiff's Malicious Prosecution Claim in Count XI.

Plaintiff asserts a malicious prosecution claim against the Defendant Officers for causing Plaintiff to be improperly subjected to a judicial proceeding without probable cause.  [DE #73, ¶¶ 165-71].  Plaintiff's malicious prosecution claim in Count XI of the First Amended Complaint should be dismissed because the Defendant Officers are immune under the ITCA.

An Indiana malicious prosecution claim is established if:  "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action terminated in the plaintiff's favor."  *Welton v. Anderson*, 770 F.3d 673, 674 (7th Cir. 2014).  However, the ITCA shields governmental employees from such claims as a governmental "employee acting within the scope of the employee's employment is not liable if a loss results from…the initiation of a judicial or administrative proceeding."  I.C. § 34-13-3-3(6); *see also Julian*, 732 F.3d at 846 (stating that Indiana law grants absolute immunity to police officers for malicious prosecution claims); *Butt v. McEvoy*, 669 N.E.2d 1015, 1017-18 (Ind. Ct. App. 1996) (applying I.C. § 34-13-3-3(6)'s predecessor provision to bar a malicious prosecution suit against a police officer).

Here, Plaintiff alleges that all actions that were taken by the Defendant Officers were taken within the scope of their employment.  [DE #73, ¶ 171].  As such, the Defendant Officers' actions fall squarely within the scope of Section 3(6) and the Defendant Officers are immune for Plaintiff's malicious prosecution claim.  Therefore, this Court should dismiss Count XI of the First Amended Complaint.

> **d. Plaintiff's *Respondeat Superior* Claim in Count XII Fails Because the Defendant Officers Are Immune for the State-Law Torts.**

Plaintiff alleges that the City of Muncie, as the principal, is liable for the violations of state law committed by the Defendant Officers, who did so within the scope of their employment and under the color of law. [DE #73, ¶¶ 172-74]. However, Plaintiff's *respondeat superior* claim fails as the Defendant Officers are immune for any alleged violations of state law—IIED and malicious prosecution. An employer will be liable for the acts of its employees that are committed within the course and scope of their employment. *See Hensley*, 735 F.3d at 595. As discussed above, the Defendant Officers are immune for the claims of IIED and malicious prosecution. As such, the City cannot be held vicariously liable for the actions of the Defendant Officers as their actions are shielded by immunity. Therefore, this Court should dismiss Count XII of the First Amended Complaint.

> **e. The Defendant Officers are Immune for Plaintiff's Civil Conspiracy Claim in Count XIII.**

Plaintiff alleges that the Defendant Officers acted in concert with one another and other co-conspirators to accomplish an unlawful purpose by unlawful means. [DE #73, ¶¶ 175-80]. Plaintiff's civil conspiracy claim fails as the Defendant Officers are immune for the above torts and without an underlying tort, the Defendant Officers cannot be said to have conspired to commit the torts and as such, Count XIII of the First Amended Complaint should be dismissed.

When two or more persons "engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means," a civil conspiracy is recognized. *Rosenbaum v. White*, 692 F.3d 593, 606 (7th Cir. 2012). However, in Indiana, a separate, independent cause of action for civil conspiracy does not exist. *Id*. Rather, a plaintiff may sue for damages resulting from the conspiracy, which requires the plaintiff to "demonstrate that the defendants acted in concert with another party in the commission of an independent tort."

*Id*.  Here, Plaintiff asserts that the Defendant Officers engaged in a civil conspiracy to commit the above alleged torts—IIED and malicious prosecution.  However, because the Defendant Officers are immune for these torts and civil conspiracy is not recognized as an independent cause of action in Indiana, the Defendant Officers cannot be said to have conspired to commit the torts and Count XIII of the First Amended Complaint should be dismissed.

### f.   This Court Lacks Subject Matter Jurisdiction over Plaintiff's Indemnification Claim in Count XIV.

Plaintiff asserts an indemnification claim against Defendant City of Muncie, based upon the City's statutory obligation to indemnify any judgment against the Defendant Officers under I.C. § 34-13-4-1.  [DE #73, ¶¶ 181-83]. This Court should dismiss Count XIV of the First Amended Complaint, the indemnification claim against the City of Muncie, for lack of subject matter jurisdiction.

A governmental entity that "defends or has the opportunity to defend the public employee shall pay any judgment other than punitive damages" provided that an employee "is subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of the public employee's employment which violates the civil rights laws of the United States."  *Sowell v. Dominguez*, 2011 WL 294758, at *14 (N.D. Ind. Jan. 26, 2011); Ind. Code § 34-13-4-1.

If liability has not been established in the case and a judgment has not been entered, the claim is not ripe because "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Sowell*, 2011 WL 294758, at *14.  If a plaintiff brings an indemnification claim before the underlying liability is resolved, courts have consistently dismissed such claims without prejudice for lack of subject matter jurisdiction.  *See id*. (holding that a motion to dismiss without prejudice of an indemnification claim is appropriate where liability was not yet established); *Smith v. Lake County*, 2017 WL 568590, at *9 (N.D. Ind. Feb.

29

13, 2017) (maintaining that if liability is not established, an indemnification claim must be dismissed without prejudice); *Hobson v. Dominguez*, 2012 WL 4361537, at \*16 (N.D. Ind. Sept. 24, 2012) (finding an indemnification claim should be dismissed without prejudice if liability is not established).

"Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction." *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1073 (S.D. Ind. 2011). Where, as here, a defendant asserts a facial challenge to subject matter jurisdiction, the court looks at the complaint to determine whether the plaintiff has sufficiently alleged a basis for federal court jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). If a claim is unripe, then the district courts lack subject matter jurisdiction over the claim. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).; *Medical Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) ("The district court was aware that the duty-to-indemnify claim was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that was issued. The proper disposition, however, would have been to dismiss.").

Here, Plaintiff's First Amended Complaint brings an indemnification claim against the City of Muncie for the alleged misconduct committed by the Defendant Officers. [DE #73, ¶¶ 181-83]. As liability has not been established at this stage and no judgment has been entered that would give rise to an indemnification claim, the claim is unripe and this Court lacks subject matter jurisdiction over same. Only in the event that this Court finds the Defendant Officers are liable for the alleged constitutional deprivations that were committed against Plaintiff can he assert an indemnification claim against the City of Muncie. However, because this claim relies on unpredictable future events that may or may not occur, Plaintiff's indemnification claim is not ripe and this Court lacks subject matter jurisdiction over it. Therefore, this Court should dismiss the indemnification claim against the City of Muncie in Count XIV of the First Amended Complaint.

## CONCLUSION

In conclusion, this Court should grant Defendants City of Muncie, Fonda King, Steve Stewart, Gordon Watters, Joseph Todd, Steve Blevins, Donald Bailey, and Terry Winters' Partial Motion to Dismiss, and in particular, the dismissal of Count I as to Fonda King, Steve Stewart, Gordon Watters, Joseph Todd, and Steve Blevins; Count II; Count IV through Count V; and Count VI through Count XIV,  for all of the above-stated reasons and/or for any relief deemed just and proper in the premises.

Respectfully submitted,

/s/ Katlyn M. Christman
KATLYN M. CHRISTMAN (#34670-64)

/s/ Joseph W. Smith
Joseph W. Smith (#29663-64)

/s/ Elizabeth A. Knight
Elizabeth A. Knight (#11865-45)

**KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.**
Attorney for Defendants, CITY OF MUNCIE, FONDA
KING, STEVE STEWART, GORDAN WATTERS,
JOSEPH TODD, STEVE BLEVINS,
DONALD BAILEY and TERRY WINTERS
833 West Lincoln Highway, Suite 340E
Schererville, IN  46375
219/322-0830; FAX: 219/322-0834
Email:  Kchristman@khkklaw.com, JSmith@khkklaw.com, Eknight@khkklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2019, the foregoing **DEFENDANTS, CITY OF MUNCIE, FONDA KING, STEVE STEWART, GORDON WATTERS, JOSEPH TODD, STEVE BLEVINS, DONALD BAILEY, AND TERRY WINTERS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

- **Katlyn M. Christman**
  KNIGHT HOPPE KURNIK & KNIGHT LTD (Schererville)
  kchristman@khkklaw.com,balexander@khkklaw.com
- **Heather Lewis Donnell**
  LOEVY & LOEVY
  heather@loevy.com,heather.lewis@aya.yale.edu,israa@loevy.com
- **Bryan Findley**
  INDIANA ATTORNEY GENERAL
  Bryan.findley@atg.in.gov,jamie.dingo@atg.in.gov
- **Danielle O. Hamilton**
  LOEVY & LOEVY
  hamilton@loevy.com,tierra@loevy.com
- **Byron D. Knight**
  KNIGHT HOPPE KURNIK & KNIGHT LTD (Schererville)
  bknight@khkklaw.com
- **Elizabeth A. Knight**
  KNIGHT HOPPE KURNIK & KNIGHT LTD (Schererville)
  eknight@khkklaw.com,kmeyer@khkklaw.com
- **Arthur Loevy**
  LOEVY & LOEVY
  arthur@loevy.com,docket@loevy.cim,jon@loevy.com
- **Jonathan I. Loevy**
  LOEVY & LOEVY
  jon@loevy.com,docket@loevy.com
- **Mollie Ann Slinker**
  INDIANA ATTORNEY GENERAL
  Mollie.slinker@atg.in.gov,elizabeth.walpole@atg.in.gov
- **Joseph W. Smith**
  KNIGHT HOPPE KURNIK & KNIGHT LTD (Schererville)
  jsmith@khkklaw.com, Dbotma@khkklaw.com

**Manual Notice:**  None.

/s/ Katlyn M. Christman

/s/ Joseph W. Smith

/s/ Elizabeth A. Knight

19-08-27 MTD FAC Memo 7152