| | | |
|---|---|---|
| STATE OF INDIANA | ) | |
| | ) SS: | IN THE DELAWARE CIRCUIT COURT 2 |
| COUNTY OF DELAWARE | ) | |

FILED
DELAWARE CIRCUIT COURT NO. 2
DELAWARE COUNTY, INDIANA

MAR 0 1 2017

Kimberly S. Dowling

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | Cause No. 18D02-9204-CF-46 |
| | ) | |
| WILLIAM E. BARNHOUSE, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

### JOINT MOTION FOR NEW TRIAL PURSUANT TO IND. CODE § 35-38-7-19 AND THE INDIANA RULES OF PROCEDURE FOR POST-CONVICTION RELIEF

William Barnhouse, by and through undersigned counsel, along with the State of Indiana, together respectfully file this **Motion for New Trial Pursuant to Ind. Code § 35-38-7-19 and the Indiana Rules of Procedure for Post-Conviction Relief**, and in support of this motion jointly state as follows:

#### Factual Background

1. On December 15, 1992, Mr. Barnhouse was convicted of one Count of Rape and one Count of Criminal Deviate Conduct, arising from the April 21, 1992 rape of the victim P.L. On both counts, the jury found him guilty but mentally ill. He was sentenced to 80 years imprisonment.

2. The victim was attacked behind a vacant building in Muncie. The victim gave a description of her attacker to the Muncie Police Department. Ostensibly based upon that description, a Muncie Police Officer stopped Mr. Barnhouse shortly after the attack.



DEFENDANT'S EXHIBIT F

3.  The victim identified Mr. Barnhouse in a one-on-one show-up procedure. During this show-up Mr. Barnhouse was standing next to three squad cars and next to several police officers. Police shined flashlights on Mr. Barnhouse's face. On the basis of this identification, Mr. Barnhouse was arrested.[1]

4.  Shortly after the attack, the victim went to the hospital where a sexual assault examination kit and the jeans she was wearing[2] were collected and sent to the Indiana State Police lab for analysis.

5.  At trial, the State presented expert testimony of a forensic serologist from the Indiana State Police crime lab. The expert testified that he found sperm on the victim's vaginal/cervical swabs and semen on the inside crotch area of her jeans.

6.  The State's forensic serologist testified that he had training in serology and had conducted about 500 serological analyses during his career. He explained that the purpose of collecting reference standards from the victim and the defendant is to see if they "match" the stain found on the crime scene evidence. Using basic serological analysis, he testified that the genetic markers detected on the vaginal/cervical swabs and jeans were consistent with that of the victim or a mixture of fluids from the victim and Mr. Barnhouse. As a result, he could not exclude Mr. Barnhouse as a possible source of the semen.

7.  At trial, the State also presented the expert testimony of a forensic hair analyst from the Indiana State Police crime lab. The hair analyst testified that he had conducted

---

[1] Prior to trial, the defense moved to suppress this identification on the basis that it was tainted and unduly suggestive. That motion was denied. This specific issue was raised in Barnhouse's direct appeal. The Indiana Court of Appeals affirmed the trial court's denial in a memorandum decision. See *Barnhouse v. State*, Memorandum Decision 18A05-9304-CR-137 (October 21, 1993).

[2] The victim testified that she put only her jeans (no underwear) and t-shirt back on after the rape.

thousands of hair examinations, comparing a questioned hair to a known hair standard side by side under a microscope. He testified that he attended a serology class at the FBI, completed DNA courses at the FBI, and worked as a visiting scientist at the FBI. The hair examiner explained to the jury that he had training in hair analysis and that the training he received was accepted in that field. The State's forensic hair analyst identified a number of characteristics found in hairs and testified that those characteristics are "somewhat individual" for each person. In this case, he testified that one hair found in the victim's pubic hair combings was "sufficiently similar" to Mr. Barnhouse's pubic hair standard to be "of common origin." He testified that this one hair "matched" Mr. Barnhouse's pubic hair standard and looked "exactly like" Mr. Barnhouse's pubic hair such that he could not tell the difference between the two hairs. He explained that if he placed that one hair in a pile of Mr. Barnhouse's pubic hair standards he could not pick it out. In its opening statement, the State argued that Mr. Barnhouse left his hair on the victim's body. In its closing argument, the State asserted that a hair in the victim's pubic hair combing belonged to Mr. Barnhouse and that the forensic evidence proved the State's case. In closing, the prosecution further argued that this hair was a "silent witness" that proved that Mr. Barnhouse committed the crime.

8.  At trial, the State relied on various pieces of evidence including, but not limited to, the victim's identification of Mr. Barnhouse, the testimony regarding the pubic hair comparison, and the testimony regarding the genetic markers in the seminal material.

9.  Mr. Barnhouse maintained his innocence during the investigation and trial. He never disputed that a heinous crime had occurred. Rather, he claimed that he was the victim of mistaken identification.

### DNA Analysis

10. In 2013, the FBI announced for the first time that testimony asserting that a crime scene hair is a "match" to a particular defendant's hair through microscopic hair comparison implies a level of certainty that exceeds the limits of science. The FBI further conceded, for the first time, that hair microscopy is limited in that hairs cannot be individualized and the size of the pool of people who could be included as a possible source of a specific hair is unknown.

11. In January 2016, with the consent of the Delaware County Prosecutor's Office, the Delaware Circuit Court No. 2 entered an Agreed Order for Post-Conviction DNA Testing in this case. (Exhibit A.) Under the terms of that Order, the victim's sexual assault kit and jeans were subjected to post-conviction DNA testing. The testing was conducted in contemplation of filing a petition for post-conviction relief pursuant to Ind. Code § 35-38-7-5. (*Id.*)

12. In 2016, STR DNA testing identified the male DNA profile of the sperm on the victim's jeans. The same male profile was identified on the sperm found on the victim's vaginal/cervical swabs. (Exhibit B.) A representative of the Muncie Police Department collected a new buccal (saliva) sample from Mr. Barnhouse. Mr. Barnhouse's DNA profile was then compared to that of the DNA profile of the sperm found on the victim's jeans and vaginal/cervical swabs. The DNA analysis excluded Mr. Barnhouse as the source of the sperm on the victim's jeans and the victim's vaginal/cervical swabs. (Exhibit C.) The victim P.L. was also excluded as a possible contributor of the DNA profile obtained from these samples. (Exhibit B.)

### Applicable Indiana Law

13. Indiana's post-conviction DNA statute provides as follows:

> Notwithstanding any law that would bar a trial as untimely, if the results of postconviction DNA testing and analysis are favorable to the person who was convicted of the offense, the court shall order any of the following:

4

> (1) Upon motion of the prosecuting attorney and good cause shown, order retesting of the identified biological material and stay the petitioner's motion for a new trial pending the results of the DNA retesting.
>
> (2) Upon joint petition of the prosecuting attorney and the petitioner, order the release of the person.
>
> (3) Order a new trial or any other relief as may be appropriate under Indiana law or court rule.

Ind. Code § 35-38-7-19. (emphasis added). The term "favorable" is not defined by statute. However, Indiana case law has provided a definition. Results are favorable to the convicted petitioner if "the results are such that there is a reasonable probability that the verdict or sentence would have been different had they been available at trial." *Greenwell v. State*, 884 N.E.2d 319, 326 (Ind. Ct. App. 2008), *trans. denied*, 898 N.E.2d 1228 (Ind. 2008). Conversely, results are considered not favorable if they are "of marginal or dubious help at trial." *Id.* at 326.

14. The undersigned State's Attorneys have discussed the DNA results with a representative from the Indiana State Police Crime Lab. Based on those discussions, the State is satisfied with the results and hereby informs the Court that the State will not be asking the Court for an order to retest the samples pursuant to I.C. § 35-38-7-19(1).

15. The parties agree that the DNA results described above are "favorable" within the meaning of I.C. § 35-38-7-19. The DNA test results prove that the sperm on the victim's jeans and the sperm on the victim's vaginal/cervical swabs did not belong to Mr. Barnhouse. Given the specific facts of this case, the parties agree that the results are such that there is a reasonable probability that Mr. Barnhouse would not have been convicted if the results had been available at trial. Consequently, the State believes that it is in the best interests of justice to vacate the Defendant's convictions herein and for the Court to order a new trial.

WHEREFORE, the parties respectfully request that this Honorable Court vacate Mr. Barnhouse's convictions and sentences and grant him a new trial.

## AFFIRMATION

We affirm under the penalties for perjury that the foregoing representations in these five pages are true to the best of our knowledge and belief.

Respectfully submitted,

_____
Frances Lee Watson, #8532-49
530 W. New York Street
Indianapolis, IN 46202
Tel.: (317) 274-5551
fwatson@iupui.edu

_____
Seema T. Saifee*
Barry C. Scheck*
**Innocence Project**
40 Worth Street, Suite 701
New York, NY 10013
Tel.: (212) 364-5340
ssaifee@innocenceproject.org
bscheck@innocenceproject.org

_____
Jeffrey Arnold, #10491-18
Prosecuting Attorney
46th Judicial Circuit of Indiana

_____
Eric M. Hoffman, #24232-18
Chief Deputy Prosecutor
46th Judicial Circuit of Indiana

*Verified Petition for Temporary Admission Granted

*Attorneys for William E. Barnhouse*

## CERTIFICATION OF NOTICE TO VICTIM

The undersigned hereby certifies to the Court that they have personally met with the victim in this case and explained to her the procedural posture of the case, the applicable law, this agreement, and other related issues.

_____
Jeffrey Arnold #10491-18
Prosecuting Attorney
46th Judicial Circuit of Indiana

_____
Eric M. Hoffman # 23432-18
Chief Deputy Prosecutor
76th Judicial Circuit of Indiana

# EXHIBIT A

## IN THE DELAWARE CIRCUIT COURT 2

WILLIAM BARNHOUSE, )
　　　　　　　　　　　　　　　)
　　　　Movant, 　　　　　　　)
v. 　　　　　　　　　　　　　)　　Cause No. 18D02-9204-CF-46
　　　　　　　　　　　　　　　)
STATE OF INDIANA, 　　　　　)
　　　　　　　　　　　　　　　)
　　　　Respondent. 　　　　　)

DELAWARE CIRCUIT COURT NO 2
DELAWARE C... ...

JAN 2 ...

Kimberly A. D...

### POST-CONVICTION DNA TESTING AGREEMENT AND INSTRUCTIONS TO TESTING LABORATORY

1. The Defendant in this case is considering whether to file a petition for post-conviction relief pursuant to Indiana Code § 35-38-7-5. Before deciding whether to file such a petition, the Defendant seeks to test various evidentiary items for the presence of DNA as such a test was not available at the time of trial in this cause.

2. By agreement of the Innocence Project and the Delaware County Prosecutor's Office, the following evidence, confirmed to be in the possession of the Delaware Circuit Court 2, shall be sent to Bode Cellmark Forensics ("Bode") for post-conviction DNA testing:

    a. State's Exhibit 3 (black jeans of victim)

    b. State's Exhibit 4 (rape kit of victim)

3. The evidence shall be delivered, within 14 days of this agreement, via Federal Express, to the following address: ATTN: EVIDENCE DEPARTMENT, Bode Cellmark Forensics, 10430 Furnace Road, Suite 107, Lorton, VA 22079.

4. A representative of the Muncie Police Department will properly package, label and ship the evidence in a scientifically acceptable manner designed to protect the chain of custody of the evidence and to ensure that the evidence is not damaged during transit.

5. Any existing documentation relating to previous testing or analysis conducted by the Indiana State Police Crime Lab will be forwarded to Bode along with the evidence.

6. Upon receipt, Bode shall inventory and photograph the evidence. Before any quantitation or testing begins, Bode shall have a phone call with counsel for

William Barnhouse, Seema Saifee, ssaifee@innocenceproject.org; tel. (212) 364-5982 and Eric Hoffman, Delaware County Prosecutor's Office, ehoffman@co.delaware.in.us; tel. 765-747-7801 ext. 348, to discuss the case and the DNA testing being requested.

7. Testing at Bode will proceed in two stages. In the first stage, Bode shall test only the crime scene evidence and, depending on the results of the testing, the victim's reference sample. At the conclusion of testing Bode shall issue a report with the results of testing. The report shall be delivered, by e-mail and hard copy, simultaneously to both parties.

8. If Bode obtains a male DNA profile as a result of the testing of the crime scene evidence, the parties will arrange to collect a buccal swab reference sample from Mr. Barnhouse. Specifics regarding the time, place and personnel who will collect this reference sample will be agreed to by the parties at a later date. The reference sample shall be separately shipped, by Federal Express, to Bode.

9. In the second stage, Bode shall perform DNA testing on Mr. Barnhouse's reference sample and issue a report containing the results of this testing and the comparison of Mr. Barnhouse's profile to the profile(s) obtained from the crime scene evidence. The report shall be delivered, by e-mail and hard copy, simultaneously to both parties.

10. Bode shall submit any NDIS eligible profiles developed from the crime scene evidence to the Indiana State Police Crime Laboratory for review for CODIS entry.

11. Bode will not unnecessarily consume any evidence samples and will attempt to preserve all portions of each sample for which consumption is not scientifically necessary.

12. Upon request, Bode will provide the parties with the underlying data from its testing, such as the electronic data, bench notes, worksheets, electropherograms, photographs, and any other documentation that relates to the testing conducted.

13. The Innocence Project shall bear all costs of testing the evidence and reference samples, including any administrative and/or incidental costs of shipping and receipt.

14. If, after completion of the testing, either party desires to examine or test items not contemplated in this order, such testing shall proceed by further written agreement of the parties or by court order.

William Barnhouse vs. State of Indiana page 3
18D02-9204-CF-46

Attorney for the State:

*[signature]*

Eric Hoffman 24232-18
Chief Deputy Prosecutor
46th Judicial Circuit of Indiana

1/21/16
Date

Attorney for the Defendant:

*[signature]*

Frances Watson 8532-49
530 W. New York Street
Indianapolis, IN 46202

1/21/06
Date

SO APPROVED AND ORDERED THIS 22nd DAY OF January, 2016.

*[signature]*
KIMBERLY DOWLING, JUDGE
DELAWARE CIRCUIT COURT NO. 2

3

# EXHIBIT B



**Bode Cellmark**
**FORENSICS**
LabCorp Specialty Testing Group

10430 Furnace Road, Suite 107
Lorton, VA 22079
Phone: 703-646-9740

**Forensic Case Report**
**June 23, 2016**

To:
Seema Saifee
Innocence Project
40 Worth St. Suite 701
New York, NY 10013

Bode Cellmark Case #: CCA1629-0030
Agency Case #: 92 FM 0871/ 92-13302

**Victim:** Patricia R. Lasley
**Suspect:** William E. Barnhouse

List of evidence received on January 29, 2016 for possible DNA analysis:
(Evidence received and evaluated, but not isolated for possible DNA analysis, is listed in the case inventory.)

| Bode Cellmark Sample Name | Agency Sample ID | Agency Description |
|---|---|---|
| CCA1629-0030-E01 | Item #2 | Labeled as "Sealed paper bag with victim's jeans" |
| CCA1629-0030-E02 | Item #1 | Labeled as "Vaginal & Cervical Swabs" |
| CCA1629-0030-R03 | Not Listed | Labeled as "Lasley, Patricia R. Saliva Sample" |

**Forensic Biology Results:**

1. Semen was confirmed in the following sample:

    CCA1629-0030-E01

**DNA Processing, Results, and Conclusions:**

The evidence was processed for DNA typing by analysis of the 13 CODIS Short Tandem Repeat loci, the Penta E locus, the Penta D locus, and the Amelogenin locus using the Promega PowerPlex® 16 HS kit.

1. A partial DNA profile was obtained from sample CCA1629-0030-R03 (Patricia R. Lasley).

2. The same DNA profile was obtained from the sperm fraction (SF) of sample CCA1629-0030-E01 and the sperm fraction (SF) of sample CCA1629-0030-E02 and is consistent with a male contributor (Male 1).

    The individual associated with sample CCA1629-0030-R03 (Patricia R. Lasley) is excluded as a possible contributor of the DNA profile obtained from the samples listed above.

3. No DNA profile was obtained from the epithelial fraction (EF) of sample CCA1629-0030-E01.

Bode Cellmark Case #: CCA1629-0030  
Agency Case #: 92 FM 0871/ 92-13302

Date: June 23, 2016

DNA Processing, Results, and Conclusions (continued):

4. The DNA profile obtained from the epithelial fraction (EF) of sample CCA1629-0030-E02 is consistent with a mixture of at least two individuals including the victim and at least one male contributor.

   Due to the possibility of allelic drop out, no conclusions can be made on the minor alleles present in the epithelial fraction (EF) of sample CCA1629-0030-E02.

See Table 1 for summary of alleles reported for each sample.

Notes:
1. Testing performed for this case is in compliance with accredited procedures under the laboratory's ISO/IEC 17025 accreditation issued by ASCLD/LAB and ANAB. Refer to certificates and scopes of accreditation for certificate numbers ALI-231-T and AT-1672, respectively.
2. The DNA profiles reported in this case were determined by procedures that have been validated according to the standards established in the FBI's Quality Assurance Standards for Forensic DNA Testing Laboratories.
3. Any reference to body fluids in evidence descriptions are based on the written descriptions of the samples by the submitting agency.
4. The DNA extracts and submitted evidence will be returned to the Muncie Police Department.
5. Sample CCA1629-0030-R03 was extracted two times (-R03a/b). Data from the second extraction (-R03b) were reported.

Report submitted by,

*Christina H. Nash*        *[signature]*

Christina H. Nash, MSFS  
DNA Analyst  
[DNA]

Purnima Bokka, MFS  
Forensic Biology Analyst I  
[Forensic Biology]

Bode Cellmark Case #: CCA1629-0030  
Agency Case #: 92 FM 0871/ 92-13302

Date: June 23, 2016

**Table 1: Analysis of Short Tandem Repeat Loci**

| Locus | CCA1629-0030-E01a1-EF | CCA1629-0030-E01a1-SF | CCA1629-0030-E02a1-EF | CCA1629-0030-E02a1-EF Major Component |
|---|---|---|---|---|
| D3S1358 | No Results | 15, 17 | 15, 16, (17) | 15, 16 |
| TH01 | No Results | 6, 8 | 7, 8 | 7, 8 |
| D21S11 | No Results | 29, 32.2 | 29, 32 | 29, 32 |
| D18S51 | No Results | 15, 16 | 13, 17 | 13, 17 |
| PentaE | No Results | 8, 12 | No Results | No Results |
| D5S818 | No Results | 9, 11 | (9), 11, (12) | 11, 11 |
| D13S317 | No Results | 10, 12 | 8, 8 | 8, 8 |
| D7S820 | No Results | 9, 10 | 8, (9), 10 | 8, 10 |
| D16S539 | No Results | 12, 13 | 10, 12 | 10, 12 |
| CSF1PO | No Results | 10, 11 | No Results | No Results |
| PentaD | No Results | 9, 10 | No Results | No Results |
| Amelogenin | No Results | X, Y | X, (Y) | X, X |
| vWA | No Results | 17, 18 | 17, (18) | 17, 17 |
| D8S1179 | No Results | 13, 14 | 12, 13 | 12, 13 |
| TPOX | No Results | 11, 11 | 8, 12 | 8, 12 |
| FGA | No Results | 21, 25 | 22, 23 | 22, 23 |

--- – Possible additional alleles  
( ) – Minor allele

**Table 1: Analysis of Short Tandem Repeat Loci (continued)**

| Locus | CCA1629-0030-E02a1-SF | CCA1629-0030-R03b1 (Patricia R. Lasley) |
|---|---|---|
| D3S1358 | 15, 17 | 15, 16 |
| TH01 | 6, 8 | 7, 8 |
| D21S11 | 29, 32.2 | No Results |
| D18S51 | 15, 16 | No Results |
| PentaE | 8, 12 | No Results |
| D5S818 | 9, 11 | 11, 11 |
| D13S317 | 10, 12 | 8, --- |
| D7S820 | 9, 10 | No Results |
| D16S539 | 12, 13 | No Results |
| CSF1PO | {10, 11} | No Results |
| PentaD | 9, 10 | No Results |
| Amelogenin | X, Y | X, X |
| vWA | 17, 18 | 17, 17 |
| D8S1179 | 13, 14 | No Results |
| TPOX | 11, 11 | No Results |
| FGA | 21, 25 | No Results |

--- – Possible additional alleles  
{ } – imbalanced alleles

Page 3 of 3

# EXHIBIT C



**Bode Cellmark FORENSICS**
LabCorp Specialty Testing Group

10430 Furnace Road, Suite 107
Lorton, VA 22079
Phone: 703-646-9740

## Supplemental Forensic Case Report
### November 14, 2016

To:
Seema Saifee
Innocence Project
40 Worth St. Suite 701
New York, NY 10013

Bode Cellmark Case #: CCA1629-0030
Agency Case #: 92 FM 0871/ 92-13302

**Victim:** Patricia R. Lasley
**Subject:** William E. Barnhouse

Partial list of evidence received on January 29, 2016 for possible DNA analysis:

| Bode Cellmark Sample Name | Agency Sample ID | Agency Description |
|---|---|---|
| CCA1629-0030-E01 | Item #2 | Labeled as "Sealed paper bag with victim's jeans" |
| CCA1629-0030-E02 | Item #1 | Labeled as "Vaginal & Cervical Swabs" |

List of evidence received on September 6, 2016 for possible DNA analysis:

| Bode Cellmark Sample Name | Agency Sample ID | Agency Description |
|---|---|---|
| CCA1629-0030-R04 | Not Listed | Labeled as "Suspect Buccal Swabs" [William Barnhouse] |

**DNA Processing, Results, and Conclusions:**

The evidence was processed for DNA typing by analysis of the 13 CODIS Short Tandem Repeat loci, the Penta E locus, the Penta D locus, and the Amelogenin locus using the Promega PowerPlex® 16 HS kit.

1. A DNA profile was obtained from sample CCA1629-0030-R04 (William Barnhouse).

2. The same DNA profile was previously obtained from the sperm fraction (SF) of sample CCA1629-0030-E01 and the sperm fraction (SF) of sample CCA1629-0030-E02 and is consistent with a male contributor (Male 1).

   The individual associated with sample CCA1629-0030-R04 (William Barnhouse) is excluded as a possible contributor of the DNA profile obtained from the samples listed above.

3. No DNA profile was previously obtained from the epithelial fraction (EF) of sample CCA1629-0030-E01.

4. The DNA profile previously obtained from the epithelial fraction (EF) of sample CCA1629-0030-E02 is consistent with a mixture of at least two individuals including the victim and at least one male contributor.

   Due to the possibility of allelic drop out, no conclusions can be made on the minor alleles present in the epithelial fraction (EF) of sample CCA1629-0030-E02.

See Table 1 for summary of alleles reported for each sample.

Bode Cellmark Case #: CCA1629-0030
Agency Case #: 92 FM 0871/ 92-13302

Date: November 14, 2016

Notes:
1. Testing performed for this case is in compliance with accredited procedures under the laboratory's ISO/IEC 17025 accreditation issued by ASCLD/LAB and ANAB. Refer to certificates and scopes of accreditation for certificate numbers ALI-231-T and AT-1672, respectively.
2. The DNA profiles reported in this case were determined by procedures that have been validated according to the standards established in the FBI's Quality Assurance Standards for Forensic DNA Testing Laboratories.
3. Any reference to body fluids in evidence descriptions are based on the written descriptions of the samples by the submitting agency.
4. The DNA extracts and submitted evidence will be returned to the Muncie Police Department.
5. A supplemental report was issued due to the submission of additional evidence. Please see original report dated June 23, 2016.

Report submitted by,

*Christina H. Nash*

Christina H. Nash, MSFS
DNA Analyst II

Bode Cellmark Case #: CCA1629-0030
Agency Case #: 92 FM 0871/ 92-13302

Date: November 14, 2016

Table 1: Analysis of Short Tandem Repeat Loci

| Locus | CCA1629-0030-E01a1-EF | CCA1629-0030-E01a1-SF | CCA1629-0030-E02a1-EF | CCA1629-0030-E02a1-EF Major Component |
|---|---|---|---|---|
| D3S1358 | No Results | 15, 17 | 15, 16, (17) | 15, 16 |
| TH01 | No Results | 6, 8 | 7, 8 | 7, 8 |
| D21S11 | No Results | 29, 32.2 | 29, 32 | 29, 32 |
| D18S51 | No Results | 15, 16 | 13, 17 | 13, 17 |
| PentaE | No Results | 8, 12 | No Results | No Results |
| D5S818 | No Results | 9, 11 | (9), 11, (12) | 11, 11 |
| D13S317 | No Results | 10, 12 | 8, 8 | 8, 8 |
| D7S820 | No Results | 9, 10 | 8, (9), 10 | 8, 10 |
| D16S539 | No Results | 12, 13 | 10, 12 | 10, 12 |
| CSF1PO | No Results | 10, 11 | No Results | No Results |
| PentaD | No Results | 9, 10 | No Results | No Results |
| Amelogenin | No Results | X, Y | X, (Y) | X, X |
| vWA | No Results | 17, 18 | 17, (18) | 17, 17 |
| D8S1179 | No Results | 13, 14 | 12, 13 | 12, 13 |
| TPOX | No Results | 11, 11 | 8, 12 | 8, 12 |
| FGA | No Results | 21, 25 | 22, 23 | 22, 23 |

( ) – Minor allele

Table 1: Analysis of Short Tandem Repeat Loci (continued)

| Locus | CCA1629-0030-E02a1-SF | CCA1629-0030-R03b1 (Patricia R. Lasley) | CCA1629-0030-R04a1 (William Barnhouse) |
|---|---|---|---|
| D3S1358 | 15, 17 | 15, 16 | 14, 15 |
| TH01 | 6, 8 | 7, 8 | 6, 7 |
| D21S11 | 29, 32.2 | No Results | 29, 32.2 |
| D18S51 | 15, 16 | No Results | 15, 17 |
| PentaE | 8, 12 | No Results | 17, 18 |
| D5S818 | 9, 11 | 11, 11 | 12, 12 |
| D13S317 | 10, 12 | 8, --- | 8, 12 |
| D7S820 | 9, 10 | No Results | 10, 10 |
| D16S539 | 12, 13 | No Results | 11, 11 |
| CSF1PO | {10, 11} | No Results | 10, 11 |
| PentaD | 9, 10 | No Results | 11, 12 |
| Amelogenin | X, Y | X, X | {X, Y} |
| vWA | 17, 18 | 17, 17 | 16, 17 |
| D8S1179 | 13, 14 | No Results | 13, 14 |
| TPOX | 11, 11 | No Results | 10, 11 |
| FGA | 21, 25 | No Results | 22, 24 |

--- – Possible additional alleles
{ } – Imbalanced alleles