## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM BARNHOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00958-TWP-DLP |
| | ) | |
| CITY OF MUNCIE, FONDA KING, | ) | |
| STEVE STEWART, GORDON WATTERS, | ) | |
| JOSEPH TODD, STEVE BLEVINS, | ) | |
| DONALD BAILEY, TERRY WINTERS, | ) | |
| CARL SOBIERALSKI, AS-YET | ) | |
| UNIDENTIFIED MUNCIE POLICE OFFICERS, | ) | |
| and AS-YET UNIDENTIFIED EMPLOYEES OF | ) | |
| THE INDIANA STATE POLICE CRIME LAB, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

This matter is before the Court on a Partial Motion to Dismiss filed pursuant to Federal

Rule of Civil Procedure 12(b)(6) by Defendants City of Muncie, Fonda King, Steve Stewart,

Gordon Watters, Joseph Todd, Steve Blevins, Donald Bailey, and Terry Winters (collectively,

"Muncie Defendants") (Filing No. 78). Plaintiff William Barnhouse ("Barnhouse") initiated this

action on March 7, 2019 against the Muncie Defendants, as well as state defendant Carl Sobieralski

and unidentified employees of the Indiana State Police Crime Lab, pursuant to 42 U.S.C. § 1983.

Barnhouse seeks to redress the deprivation of his constitutional rights after he was exonerated

through DNA evidence of a wrongful conviction and imprisonment for rape.  In his Amended

Complaint, he asserts fourteen separate claims for, among other things, due process violations

(Filing No. 73).  The Muncie Defendants ask the Court to dismiss twelve of the claims brought in

the Amended Complaint.  For the following reasons, the Court **grants in part and denies in part**

the Partial Motion to Dismiss.

## I.   <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Barnhouse as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiff William Barnhouse was wrongly convicted of a 1992 rape of which he was totally innocent. (Filing No. 73 at 1.)  He lost twenty-five years of his life unjustly imprisoned before he was exonerated through DNA evidence. *Id*. When he filed the instant Amended Complaint on July 30, 2019, Barnhouse was 62 years old.  Barnhouse has struggled his entire life with cognitive deficiencies and mental illness.  His I.Q. is significantly below average, qualifying him for a clinical diagnosis of mental retardation. His mental illness condition is most often diagnosed as paranoid schizophrenia. Barnhouse's conditions led to him being repeatedly committed to psychiatric hospitals in the years leading up to 1992.  Barnhouse also was born with Klinefelter's Syndrome, a chromosomal condition that results in two or more X chromosomes in males.  The primary feature of Klinefelter's Syndrome is the inability to produce sperm.  *Id.* at 7–8.

Defendant City of Muncie is an Indiana municipality.  Defendants Fonda King ("Officer King"), Steve Stewart ("Officer Stewart"), Gordon Watters ("Officer Watters"), Joseph Todd ("Officer Todd"), Steve Blevins ("Officer Blevins"), Donald Bailey ("Sergeant Bailey"), and Terry Winters ("Sergeant Winters"), were police officers in the Muncie Police Department.  Defendant Carl Sobieralski ("Sobieralski") was a forensic scientist in the Indiana State Police Crime Lab.  *Id.* at 4–5.

On April 21, 1992, P.L. left her Muncie home in the early morning to buy cigarettes at a nearby store. While on her way to the store, a man riding a black bicycle approached her and pulled out a knife. The man threatened to kill P.L. if she did not go with him. He put his arm around her and walked her down an alley to a vacant building. There were no lights in the vacant building. The man again threatened P.L. with a knife and vaginally raped her twice. He then forced her to perform oral sex on him and then vaginally raped her again. P.L. felt the perpetrator ejaculate. P.L. complied when the man told her to get dressed. As she walked away from the scene, the man began circling her with his bicycle. He followed her on his bicycle for a few minutes, and then he rode away back toward the crime scene. *Id.* at 5–6.

P.L. ran to a store and told a store clerk that she had been raped. A store employee called the police. P.L. did not clean herself while she waited for police to arrive. Officer King arrived, interviewed P.L., and took a description of the attacker. She described her attacker as a white male, slim, possibly shorter than 5'9", with shoulder-length dark brown hair, with an underbite, wearing light-colored jeans and a gray sweatshirt, and riding a black bicycle with handlebars that bent forward. *Id.* at 6. Officer King issued a "Be On the Lookout" ("BOL") notice over the radio; however, the description of the attacker provided over the radio differed from the description P.L. provided to Officer King. Officer King described the attacker as having a mustache, being 5'9" or 5'10", and the handlebars on the bicycle curving back toward the rider. *Id.* at 7.

Soon after hearing the BOL, Officers Todd, Stewart, Blevins, and Watters stopped Barnhouse. At least one of the officers had arrested Barnhouse on prior occasions. Barnhouse was known to some of the officers and those officers knew about Barnhouse's cognitive deficiencies and mental illness. Because of their previous familiarity with Barnhouse, they also

knew that he could not produce sperm because of his Klinefelter's Syndrome (Filing No. 73 at 7–8).

When the rape occurred, Barnhouse was miles away and on his way home from a party at Ball State University. Barnhouse had never met P.L. and did not know her. Officers Todd, Stewart, Blevins, and Watters knew that Barnhouse did not match the description of the attacker relayed on the BOL; Barnhouse was wearing a black t-shirt, a blue jacket, and blue jeans, he did not have a mustache, and he was about 6'1" and 200 pounds. Even though they did not observe Barnhouse committing any crimes, and despite their familiarity with Barnhouse's mental and physical conditions, Officers Todd, Stewart, Blevins, and Watters arrested Barnhouse. *Id.*

Once the officers detained Barnhouse, Officer Stewart radioed Officer King to tell her that he had stopped a person who fit the description of the attacker. Officer King agreed to drive P.L. to the location where Officer Stewart stopped Barnhouse. On the way there, Officer King told P.L. that police had stopped a person who matched her description of the attacker, which was unduly suggestive and primed P.L. to falsely identify Barnhouse. When Officer King and P.L. arrived at the location where Barnhouse had been stopped, Officers Todd, Stewart, Blevins, and Watters placed Barnhouse in the middle of them and in front of three squad cars, and they shined flashlights in Barnhouse's face. Officer King sat in the car with P.L. and indicated to her that Barnhouse was her attacker. P.L. then falsely identified Barnhouse as the man who raped her. No police "line-up" with Barnhouse was ever conducted. *Id.* at 8–9.

The officers arrested Barnhouse based solely on P.L.'s identification. They transported Barnhouse to the police station to be processed and interrogated, and he was strip searched at the station. While being interrogated by the police (including Sergeants Bailey and Winters), Barnhouse truthfully denied any involvement in the rape. His repeated requests for an attorney

were denied. The police officers took advantage of Barnhouse's mental illness and cognitive deficiencies by fabricating that he spontaneously confessed to them.  According to the officers, Barnhouse spontaneously offered the following false statements at the police station: "he'd just been partying with a girl named 'Tric;' all he did was kiss her; he shouldn't carry a knife; and he didn't pull a knife on anybody." *Id.* at 9–10.  This "confession" was fabricated by the police officers.  Barnhouse never confessed or gave any information about the crime to anyone at any time because he knew nothing about the crime and had nothing to do with it.  However, the officers memorialized the false and fabricated inculpatory statement in a fabricated police report. *Id.* at 10.

Barnhouse pleads in the alternative that the police officers took advantage of his mental and intellectual disabilities and continued to interrogate him about his knowledge of and involvement in the rape of P.L.  Barnhouse requested an attorney, but the police officers ignored his request and continued to question him.  Barnhouse continued to deny any involvement in or knowledge of the rape. But with knowledge of Barnhouse's limited mental and intellectual capacity, the police officers continued to pressure Barnhouse to provide details of the rape.  The officers provided Barnhouse with facts about the rape that were known only by them and P.L. They persisted in questioning Barnhouse despite his assertion of his right to counsel and denial of having anything to do with the rape of P.L.  Eventually, Barnhouse provided an inculpatory statement that he had only "kissed" and "played around" with P.L., but he did not rape her.  The police officers knew that Barnhouse's statement was involuntary and unreliable.  Barnhouse did not provide any information about the rape that was not already known to the officers.  The officers did not make any attempt to prepare a statement for Barnhouse, and they did not attempt to have him sign a statement or confession. During the interrogation, the police officers recognized Barnhouse's obvious cognitive deficiencies and mental illness, but rather than take steps to ensure

Barnhouse was truly and freely agreeing to confess, the officers took advantage of his condition and continued their interrogation in a manner intended to force Barnhouse to falsely implicate himself in the crime. *Id.* at 10–12.

Soon after Barnhouse was arrested, officers transported P.L. to the hospital where a sexual assault kit and her jeans were collected. Sperm was collected from P.L.'s vaginal and cervical swabs, and seminal fluid was collected from the inside of her jeans. Serology testing was performed by the Indiana State Crime Lab on the swabs, and the results were inconclusive, meaning Barnhouse could not be included or excluded based on the serology testing (Filing No. 73 at 12).

With the inconclusive serology results and at least some of the police officers' knowledge that Barnhouse could not produce sperm, the police officers needed more evidence to falsely blame the crime on Barnhouse. They turned to Sobieralski, a forensic hair examiner from the Indiana State Crime Lab. Sobieralski conducted a microscopic hair analysis of P.L.'s pubic hair and Barnhouse's pubic hair. His report concluded that one hair from P.L.'s pubic hair combing was "sufficiently similar" to Barnhouse's pubic hair standard such that he could not tell the difference between the two hairs. He also reported that one hair was "exactly like" and "matched" Barnhouse's pubic hair standard. *Id.* at 12–13.

Sobieralski's report was false and contrary to the accepted practices in the field of hair analysis at the time. In particular, it was against the accepted science at the time to assert that microscopic hair comparison could produce a "match" between two hairs. Additionally, the use of hair comparison for individualization also was against accepted science at the time. At that time, hair microscopy could not uniquely identify one person as the source of a hair. Sobieralski

knew of the forensic problems with his analysis but withheld this information from the prosecution and Barnhouse's defense counsel.  *Id.* at 13.

The police officers created a series of false and fraudulent police and forensic reports and related memoranda, fabricated evidence (including a fabricated confession), used unduly suggestive witness identification procedures, and manufactured witness statements, which they inserted into their case file.  This evidence, utilized to show Barnhouse's purported connection to the crime, contained statements and described events that the police officers knew to be false.  They prepared and signed off on these reports, both as investigators and as supervisors, despite their knowledge that the information in the reports was false.  At the same time, the police officers withheld from the prosecution and Barnhouse's defense counsel evidence that would exculpate Barnhouse, including evidence of their suggestive witness identification procedures, their coercive tactics, and exculpatory police and forensic reports and witness statements.  *Id.* at 14.

Barnhouse alleges,

Defendants' misconduct includes that of the supervisors, who knew full well of Defendants' misconduct and their fabrication of a case against Mr. Barnhouse. These supervisors nevertheless intentionally ignored and approved Defendants' misconduct, and decided to make Mr. Barnhouse responsible for a crime he did not commit, rather than directing the officers and forensic employees to go out and find the person who had raped P.L.

*Id.* at 14–15. Furthermore, "Defendants concealed the misconduct described above from Mr. Barnhouse and his criminal defense attorneys," and, "[d]ue to the false evidence procured by Defendants, Mr. Barnhouse was charged with rape and criminal deviant conduct."  *Id.* at 15.

At trial, the false evidence that had been developed was used against Barnhouse.  During the closing argument, the prosecution told the jury that the fabricated hair "match" was a "silent witness" against Barnhouse.  After just two days of trial and based on the fabricated evidence, Barnhouse was wrongfully convicted of rape and criminal deviate conduct.  He was sentenced to

eighty years in prison.  Absent the misconduct of the Defendants, Barnhouse would have never been prosecuted for or convicted of raping P.L. (Filing No. 73 at 15).

Barnhouse never gave up on maintaining his innocence. He was involved in post-conviction litigation for two decades, beginning in 1993 with a direct appeal followed by subsequent post-conviction petitions and appeals.  Barnhouse also began gathering information that he was not the only victim of fabricated forensic evidence from the Muncie Defendants.  *Id.* at 15–16.

The Federal Bureau of Investigation ("FBI") announced in 2013 that testimony that a crime scene hair is a "match" to a particular defendant's hair through microscopic hair comparison implies a level of certainty that exceeds the limits of science. The FBI announced that hair microscopy is limited in that hairs cannot be individualized, and the size of the pool of people who could be included as a possible source of a specific hair is unknown.  Then in April 2015, the FBI acknowledged that nearly every examiner in its microscopic hair comparison unit gave flawed and exaggerated testimony in more than 95% of the trials reviewed in a two-decade period before 2000. Many individuals who were convicted based on flawed microscopic hair comparison have had their convictions overturned through DNA testing. The FBI reported that of the 330 convictions in the country overturned through DNA testing, at least seventy-four involved the same false microscopic hair analysis used in Barnhouse's case.  *Id.* at 16–17.

With the FBI's renouncement of microscopic hair analysis as fundamentally flawed, Barnhouse, with the consent of the Delaware County Prosecutor's Office, filed a motion for post-conviction DNA testing of P.L.'s sexual assault kit and jeans in January 2016.  Bode Cellmark Forensics in Virginia conducted the DNA testing and obtained a single male DNA profile from

the vaginal swab extracts and jeans.  Barnhouse gave a saliva sample.  The DNA testing excluded Barnhouse as the source of the DNA collected from the vaginal swab and jeans.  *Id.* at 17.

On March 1, 2017, Barnhouse and the State of Indiana filed a joint motion to vacate Barnhouse's convictions.  One week later, on March 8, 2017, the Delaware Circuit Court granted the joint motion.  Shortly thereafter, the State of Indiana moved to dismiss the case.  On May 10, 2017, after Barnhouse had spent more than twenty-five years in prison, the court granted the State's motion, and Barnhouse was set free.  *Id.*

On March 7, 2019, Barnhouse filed a Complaint against the City of Muncie, Officer King, Officer Stewart, Officer Watters, Officer Todd, Officer Blevins, Sergeant Bailey, Sergeant Winters, Sobieralski, Unidentified Muncie Police Officers, and Unidentified Employees of the Indiana State Police Crime Lab (Filing No. 1).  Then on July 30, 2019, Barnhouse filed the Amended Complaint against these same Defendants, adding an additional claim (Filing No. 73).  On August 27, 2019, the City of Muncie, Officers King, Stewart, Watters, Todd, and Blevins, and Sergeants Bailey and Winters filed the instant Partial Motion to Dismiss, asking the Court to dismiss all of the claims except the Section 1983 claims for a coerced and false confession and conspiracy to deprive constitutional rights (Filing No. 78).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.  However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

The Amended Complaint alleges fourteen claims: Count I – 42 U.S.C. § 1983 Due Process: Fabrication of Evidence Against Individual Defendants; Count II – 42 U.S.C. § 1983 Due Process: Brady Violations Against Individual Defendants; Count III – 42 U.S.C. § 1983 Coerced and False Confession Against Individual Police Officer Defendants; Count IV – 42 U.S.C. § 1983 Violation of Procedural Due Process Against Individual Defendants; Count V – 42 U.S.C. § 1983 Liberty Deprivation Absent Probable Cause  Against Individual Defendants; Count VI – 42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights Against Individual Defendants; Count VII – 42 U.S.C. § 1983 Failure to Intervene Against Individual Defendants; Count VIII – 42 U.S.C. § 1983

Municipal Liability Against Defendant City of Muncie; Count IX - 29 U.S.C. § 794 Section 504 of the Rehabilitation Act of 1973 Against Defendant City of Muncie; Count X – State Law Claim Intentional Infliction of Emotional Distress Against Individual Defendants; Count XI – State Law Claim Malicious Prosecution Against Individual Defendants; Count XII – State Law Claim Respondeat Superior Against Defendant City of Muncie; Count XIII – State Law Claim Civil Conspiracy Against Individual Defendants; and Count XIV – State Law Claim Indemnification Against Defendant City of Muncie.  In their Partial Motion to Dismiss, the Muncie Defendants ask the Court to dismiss twelve of the fourteen claims brought in the Amended Complaint.  The Court will address each of the claims as presented by the Muncie Defendants in their Motion.

**A.**     **Count I: Fabrication of Evidence – King, Stewart, Watters, Todd, and Blevins**

The Muncie Defendants argue the Section 1983 fabrication of evidence claim against Officers King, Stewart, Watters, Todd, and Blevins should be dismissed because the allegations in the Amended Complaint do not show that these defendants had any personal involvement in the fabrication of evidence.  Rather, the allegations indicate that Sergeants Bailey and Winters were involved in interrogating Barnhouse at the police station.  Barnhouse truthfully denied knowledge of or involvement in the rape, but the police fabricated spontaneous incriminating statements.  The Muncie Defendants argue the pleadings do not include Officers King, Stewart, Watters, Todd, and Blevins in this fabrication of evidence.  Rather, Barnhouse asserts only conclusory statements about these five defendants that are insufficient to state a claim.

They assert Section 1983 liability is imposed on an official "who subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012).  Individual liability under Section 1983 requires that the public official defendant was personally

involved in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Because Officers King, Stewart, Watters, Todd, and Blevins are not alleged to have been personally involved in this fabrication of evidence, this claim must be dismissed as to them.

Barnhouse responds that he has pled a viable Section 1983 claim for violation of his Fourteenth Amendment right to a fair trial, and his legal theory that the Muncie Defendants fabricated evidence supports his claim. Barnhouse argues his allegation that the police defendants fabricated a confession made by Barnhouse even though Barnhouse made no such confession is sufficient. These officers took advantage of his mental and intellectual deficiencies during interrogations, and then used their fabricated evidence against Barnhouse during trial to deprive him of a fair trial and of his liberty. A fabrication of evidence claim under Section 1983 is cognizable if the falsely manufactured evidence "is later used to deprive the defendant of her liberty in some way." *Whitlock*, 682 F.3d at 580. Barnhouse argues he has adequately pled this.

Barnhouse further asserts that the Muncie Defendants' argument is unavailing concerning a lack of personal involvement in the interrogation at the police station by Officers King, Stewart, Watters, Todd, and Blevins. Barnhouse alleged that he was interrogated by one or more of the "Police Defendants," and all of them took advantage of his mental and cognitive limitations by fabricating inculpatory statements. Barnhouse specifies individual defendants' actions where he currently possesses such information, and other paragraphs in his Amended Complaint allege misconduct committed by limited and defined subsets of defendants, such as the "Police Defendants." Barnhouse argues that, under Seventh Circuit law, an allegation explicitly directed at all or a particular subgroup of defendants is sufficient to plead personal involvement even if each defendant comprising the group is not named individually in each separate paragraph. *See*

12

*Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).  Barnhouse argues he has named the police officers involved in the investigation, described the misconduct used to secure his wrongful conviction, and alleged that the "Police Defendants" collectively committed that misconduct.  Without discovery, it is not reasonable to expect, nor does the law require, Barnhouse to identify every specific action each police defendant took.

The Muncie Defendants reply that Barnhouse is incorrect about his theory of collective responsibility of the "Police Defendants" because a defendant must be put on notice of the scope of the claims against him.  *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). The Muncie Defendants assert that Barnhouse's argument fails because he specifically alleges that it was Sergeants Bailey and Winters who were involved in the alleged fabrication of evidence. Barnhouse alleges that he was interrogated by Sergeants Bailey and Winters, where he truthfully denied any involvement in the rape and his requests for an attorney were denied.  Then Barnhouse alleges that "Police Defendants" fabricated a confession.  The Muncie Defendants argue that, by the very nature of naming Sergeants Bailey and Winters separately with respect to their involvement in the interrogation, subsequent allegations concerning statements made or allegedly not made during the interrogation are logically read to refer to Sergeants Bailey and Winters. Barnhouse's generic, categorical allegations cannot save this claim against Officers King, Stewart, Watters, Todd, and Blevins.

Reviewing the 38 page Amended Complaint in its entirety reveals that the pleadings base the fabrication of evidence claim on the interrogation, false confession, and police reports of that false confession.  The pleadings allege that Barnhouse was interrogated "by one or more of the Police Defendants, including Defendant Sergeants Donald Bailey and Terry Winters." (Filing No. 73 at 10.) Then the Amended Complaint alleges the "Police Defendants" fabricated a confession

and memorialized Barnhouse's false and fabricated inculpatory statement in a fabricated police report.

The Seventh Circuit recently has explained,

A contention that "the defendants looted the corporation"—without any details about who did what—is inadequate. Liability is personal. An allegation that *someone* looted a corporation does not propound a plausible contention that *a particular person* did anything wrong. The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed. That is true even for allegations of conspiracy.

*Bank of Am.*, 725 F.3d at 818 (emphasis in original).

The Amended Complaint fails to provide notice to Officers King, Stewart, Watters, Todd, and Blevins of any wrongful conduct they allegedly committed pertaining to the fabrication of evidence. Alleging collective responsibility of the "Police Defendants" is not sufficient to maintain the fabrication of evidence claim against Officers King, Stewart, Watters, Todd, and Blevins, especially where Barnhouse has alleged that Sergeants Bailey and Winters participated in the wrongful conduct under this claim. Therefore, the Court **grants** the Muncie Defendants' Motion to Dismiss Count I as to Officers King, Stewart, Watters, Todd, and Blevins.

**B.     Count II: Withholding or Concealing Evidence – Police Officer Defendants**

Next, the Muncie Defendants argue that Count II should be dismissed as to each of the police officer defendants because the pleadings establish that exculpatory evidence was not withheld or concealed. Barnhouse's "*Brady* claim" is based upon withholding and suppressing exculpatory evidence of the Defendants' "suggestive witness identification procedures, their coercive tactics, and exculpatory police and forensic reports and witness statements." (Filing No. 73 at 14.) However, the Muncie Defendants argue the pleadings show that this evidence was not concealed from Barnhouse because he was present during the witness identification procedure and

his interrogation.  Relying on public records, the Muncie Defendants also argue that Barnhouse moved to dismiss the evidence of witness identification during his trial proceedings, further showing that this evidence was not withheld from him.

The Muncie Defendants point out that the *Brady* rule applies in situations where information is discovered after trial that was known to the prosecutor but unknown to the defense. *United States v. Agurs*, 427 U.S. 97, 103 (1976). "[E]vidence cannot be said to have been suppressed in violation of *Brady* if it was already known to the defendant." *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017).  Furthermore, *Brady* cannot serve as the basis of a cause of action against police officers for failing to disclose to a prosecutor the circumstances surrounding a coerced confession.  *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006).   The Muncie Defendants argue because Barnhouse was present during the identification, all the facts and circumstances of the identification already were known to Barnhouse, thereby precluding a *Brady* claim.

The Muncie Defendants additionally argue that qualified immunity protects them against liability for the *Brady* claim asserted in the Amended Complaint.  They argue that a duty to disclose the circumstances of the identification procedures was not clearly established at the time of the incident.  The Muncie Defendants assert they are "unaware of any decision by the Seventh Circuit or any of the other Circuits that would have clearly established such an obligation under *Brady* in 1992 to disclose the facts and circumstances of an identification procedure used." (Filing No. 79 at 12.)

Barnhouse responds that his *Brady* claim is based upon the use of unduly suggestive and coercive tactics to procure a false identification of him, but those tactics were not disclosed. Barnhouse agrees that evidence that was already known to him cannot support a *Brady* claim;

however, the Muncie Defendants' view of the allegations is too narrow. The allegations are not limited only to the identification procedures used when Barnhouse was placed in front of the police officers without any protections against unduly suggestive tactics. The allegations also include unduly suggestive statements made by Officer King to P.L. when they were driving to the scene of the arrest as well as statements made by Officer King to P.L. when they were sitting in the police car at the scene. These facts were not disclosed to or known by Barnhouse before or during his trial. The withholding of the circumstances of P.L.'s identification of Barnhouse prevented him from being able to prove that the key evidence against him was false.

Concerning qualified immunity, Barnhouse argues that, in 1992, it was clearly established that identification procedures violate due process if they are unduly suggestive—*see Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972); *Simmons v. United States*, 390 U.S. 377, 384 (1968)—and suppressing exculpatory evidence is unconstitutional. *Newsome v. McCabe*, 256 F.3d 747, 752–53 (7th Cir. 2001) (it was clearly established in 1979 and 1980 that police cannot withhold exculpatory information from prosecutors); *see also Hampton v. City of Chicago*, 2017 WL 2985743, at *29 (N.D. Ill. July 13, 2017) (denying qualified immunity to officers for withholding use of manipulative tactics during identification in 1981). Thus, Barnhouse argues, the Muncie Defendants had sufficient notice that their actions violated Barnhouse's constitutional rights, so they are not entitled to qualified immunity.

In reply, the Muncie Defendants argue that Barnhouse filed a motion to suppress the identification evidence, and during the hearing on that motion, Barnhouse had the opportunity to cross-examine Officer King about any conversations she had with P.L., but he failed to do so, and he failed to examine P.L. about conversations she had with Officer King. Therefore, the Muncie Defendants argue, Barnhouse had opportunities to discover any conversations between Officer

King and P.L., and this evidence was not withheld or concealed. Furthermore, as to qualified immunity, the Muncie Defendants repeat that there was no clearly established right to the disclosure of identification procedures at the time of the incident.

As required when reviewing a motion to dismiss, the Court accepts the pleadings as true and draws all inferences in favor of Barnhouse as the non-moving party. *Bielanski*, 550 F.3d at 633.   The Court concludes that the allegations show Barnhouse was aware of any evidence obtained through his interrogation since he was present at his own interrogation, and further, he was aware of the identification procedures used when he was placed in front of the police officers and identified by P.L.   Therefore, this evidence was not withheld from Barnhouse and cannot support a *Brady* claim.

However, Barnhouse further pled that unduly suggestive tactics were used by Officer King when she was in the police car with P.L., and this evidence was not known to Barnhouse.  While Barnhouse acknowledges that "the Court could take judicial notice of . . . the fact that Plaintiff filed a motion to suppress P.L.'s false identification of him," (Filing No. 81 at 16 n.1), that motion to suppress was not based on Officer King's suggestive statements to P.L. (*see* Filing No. 79-10). While the Muncie Defendants argue that Barnhouse could have discovered this evidence on cross-examination, at this stage of the litigation, the Court accepts Barnhouse's allegations as being sufficient to support a *Brady* claim against Officer King for withholding evidence about unduly suggestive identification tactics.  But the allegations do not support a *Brady* claim against the other police officer defendants because the other evidence (with which these other officers allegedly were involved) was not withheld from Barnhouse.  And Barnhouse's allegation that "exculpatory police and forensic reports and witness statements" were withheld is insufficiently pled in conclusory fashion.

As to qualified immunity for Officer King against the *Brady* claim, the Seventh Circuit asked, "was it clearly established in 1979 and 1980 that police could not withhold from prosecutors exculpatory information about fingerprints and the conduct of a lineup? The answer is yes." *Newsome*, 256 F.3d at 752 (internal citations omitted). The Court is not persuaded by the Defendants' distinction of *Newsome* based on the language of "fingerprints *and* the conduct of a lineup." As noted in *Newsome*, it was clearly established before 1992 that police cannot withhold from prosecutors exculpatory information about a lineup.  The Court concludes that Officer King had sufficient notice that her actions violated Barnhouse's constitutional rights, so she is not entitled to qualified immunity as to the *Brady* claim.

The Court **grants** the Motion to Dismiss Count II of the Amended Complaint against Officer Stewart, Officer Watters, Officer Todd, Officer Blevins, Sergeant Bailey, and Sergeant Winters, but **denies** the Motion to Dismiss Count II against Officer King.

## C.    Count IV: Procedural Due Process – Police Officer Defendants

The Muncie Defendants argue that Count IV of the Amended Complaint (violating procedural due process rights guaranteed by the Fourteenth Amendment) should be dismissed because, as alleged, the claim is not cognizable under Section 1983, and qualified immunity protects the police officer defendants.

In Count IV, Barnhouse alleges, "Defendants falsely accused Plaintiff of criminal activity and caused Plaintiff to be improperly subjected to criminal prosecution for which there was no probable cause. Criminal prosecution was commenced and continued maliciously . . . ." (Filing No. 73 at 26.) "Thus, Defendants violated Plaintiff's right to procedural due process guaranteed by the Fourteenth Amendment to the U.S. Constitution." *Id.*

The Defendants explain,

> Defendants recognize that the Seventh Circuit in *Julian v. Hanna* authorized claims against Indiana police officers under Section 1983 for malicious prosecution. *Julian*, 732 F.3d 842, 847 (7th Cir. 2013). Malicious prosecution claims, however, are wholly inconsistent with the Fourth Amendment's objective-reasonableness standard and are duplicative of pre-trial Fourth Amendment claims, and make little sense in the context of due process, which already protects criminal defendants' constitutional right to a fair trial. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 924–26 (2017) (*Manuel I*) (Alito, J., dissenting). Defendants recognize the binding effect of *Julian*, but wish to preserve this issue for appeal.

([Filing No. 79 at 13](#).)

The Muncie Defendants argue that the police officer defendants are entitled to qualified immunity because it was not clearly established in 1992 that a due process right exists to be free from prosecution with malice or without probable cause. The law applicable to a Section 1983 malicious prosecution claim has never been clearly defined. The Muncie Defendants assert that the law, as it stands today, does not clearly establish the right to be free from prosecution without probable cause. *See Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) (*Manuel II*). The Seventh Circuit explained in *Manuel II* that "[t]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Id.* The Muncie Defendants argue that, because the current law does not clearly establish such a right, it follows that this right did not exist and was not clearly established in 1992.

Additionally, the Muncie Defendants contend, it was not until the Seventh Circuit's 2013 opinion in *Julian v. Hanna* that it was established in this circuit that police officers in Indiana could be liable for malicious prosecution under Section 1983. *See Julian*, 732 F.3d at 847. Prior to the *Julian* decision, a police officer in Indiana could not be subjected to a claim for malicious prosecution under Section 1983, *see id.*, and even the circuit precedent upon which the Seventh Circuit relied in *Julian* was issued after the prosecution of Barnhouse. *See id.* at 845. At the time of Barnhouse's conviction, the Seventh Circuit had expressed uncertainty that a right to be free

from malicious prosecution even existed and stated, "whether or not the right to be free from prosecution without probable cause exists, it does not appear to be clearly established," so qualified immunity would protect the defendant from such a claim. *Kompare v. Stein*, 801 F.2d 883, 891 n.9 (7th Cir. 1986). The Muncie Defendants argue the police officer defendants are entitled to qualified immunity on Count IV.

Barnhouse responds that he has adequately pled a Section 1983 malicious prosecution claim under *Julian*, and the Muncie Defendants have admitted that such a claim exists, only arguing such a claim is not cognizable to preserve the argument for appeal. Concerning qualified immunity, Barnhouse asserts that the analysis turns on whether particular conduct was a clearly established constitutional violation at a particular point in time, not whether a particular type of tort or remedy for that conduct was available at the time. *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("when the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case"). Barnhouse argues that the Court must consider "whether the fabrication of evidence alleged in Plaintiff's amended complaint makes out a clearly established constitutional violation. For all the reasons explained above, it does. Whether other victims of the same misconduct labeled their claims as 'malicious prosecution' claims or used some other nomenclature is of no moment," (Filing No. 81 at 36), and qualified immunity should not apply.

A review of the Amended Complaint shows that Barnhouse has adequately pled a claim under *Julian*. He sufficiently pled that he was improperly prosecuted without probable cause and maliciously prosecuted, and Indiana does not provide an adequate state law remedy. However, the Court agrees with the Muncie Defendants concerning qualified immunity. There is no "constitutional right not to be prosecuted without probable cause," *Manuel II*, 903 F.3d at 670, and

20

Barnhouse's argument concerning fabrication of evidence cannot defeat qualified immunity for this separate claim for malicious prosecution and prosecution without probable cause. The police officer defendants in this case were not on fair notice in 1992 that their conduct violated a clearly established constitutional right that would give rise to a *Julian* claim. Therefore, the police officer defendants are entitled to qualified immunity against Count IV of the Amended Complaint. The Motion to Dismiss is **granted** as to Count IV on the basis of qualified immunity.

D.    **Count V: Liberty Deprivation without Probable Cause – Police Officer Defendants**

In Count V of the Amended Complaint, Barnhouse alleges that "the Defendants caused Plaintiff to be detained and imprisoned without probable cause. Plaintiff was incarcerated prior to trial, and his incarceration continued until his eventual release 25 years later." (Filing No. 73 at 27.)

The Muncie Defendants argue that this claim is time-barred because, in Indiana, a Section 1983 claim has a two-year statute of limitations. *Behavioral Institute of Ind., LLC v. City of Hobart Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). The Muncie Defendants contend that if the claim is characterized as a false arrest claim under the Fourth Amendment, it is untimely because a false arrest claim begins to accrue at the point of issuance of process or arraignment. *See Wallace v. Kato*, 549 U.S. 384, 390 (2007). Barnhouse was arraigned on April 23, 1992, and thus, any false arrest claim under the Fourth Amendment expired on April 23, 1994, making the claim untimely.

If the claim is characterized as a deprivation of liberty as applied to the time detained after the legal process commenced, the Muncie Defendants again argue such a claim is time-barred because post-legal process pre-trial detention also is governed by the Fourth Amendment. *Manuel I*, 137 S. Ct. at 919. "[O]nce a trial has occurred, the Fourth Amendment drops out: A person

challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.* at 920 n.8.

The Muncie Defendants argue that Barnhouse's claim for liberty deprivation without probable cause concerns the time period after legal process began until his conviction, and as such, the two-year statute of limitations expired on December 15, 1994, which is two years after Barnhouse's conviction, which ended his seizure under the Fourth Amendment. The Muncie Defendants assert that the Seventh Circuit held in *Manuel II* that a claim for detention without probable cause accrued when the plaintiff was released from custody, but in that case, the plaintiff was not convicted and, thus, is distinguishable from this case. *Manuel II*, 903 F.3d at 669.

The Muncie Defendants further argue that probable cause existed to believe that Barnhouse had raped P.L. They assert that police officers are entitled to rely on a victim's identification of a perpetrator in making a probable cause determination. They argue that P.L. identified Barnhouse as her attacker, and the police had no reason to believe she identified him because of malice or a grudge. They could rely on P.L.'s identification, which established probable cause, which in turn destroys Barnhouse's claim for pre-trial detention without probable cause.

Additionally, the Muncie Defendants argue, the police officer defendants are entitled to qualified immunity because it was not clearly established that a right to be free from pre-trial detention without probable cause existed until the Supreme Court recognized such a right in *Manuel I.* Thus, at the time of Barnhouse's pre-trial detention in 1992, it was not clearly established that Barnhouse had a right to be free from pre-trial detention without probable cause.

Barnhouse responds that his claim accrued when his conviction was overturned and he was released from custody. "The wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends."

*Manuel II*, 903 F.3d at 670.  Any attempt to bring his pre-trial detention claim earlier would have been barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Barnhouse asserts that the Muncie Defendants' argument is wrong that the claim accrued at the time of Barnhouse's conviction, pointing to *Camm v. Faith*, 937 F.3d 1096, 1107 (7th Cir. 2019) ("We held in *Manuel* that a Fourth Amendment claim for wrongful detention accrues when the detention ends."). And the Supreme Court recently stated that the statute of limitations begins to run when the criminal proceeding favorably terminates. *McDonough v. Smith*, 139 S. Ct. 2149, 2161 (2019).

Barnhouse asserts that his conviction was not invalidated within the meaning of *Heck* until March 8, 2017, when it was vacated by the Delaware Circuit Court, and his criminal proceeding did not end in his favor until May 10, 2017, when prosecutors dropped all charges against him. Thus, his claim did not accrue until March 8, 2017, at the earliest, so his claim was timely filed on March 7, 2019.  Barnhouse explains that he is not bringing a false arrest claim, as suggested by the Muncie Defendants, and thus, the dates of his arrest and issuance of process or arraignment are irrelevant to his claim. Barnhouse further asserts that probable cause did not exist to support his arrest when the false and fabricated evidence and the unduly suggestive identification evidence is put aside, which the Court must do at the motion to dismiss stage.

The Seventh Circuit recently held,

> When a wrong is ongoing rather than discrete, the period of limitations does not commence until the wrong ends. Notice that we speak of a continuing *wrong*, not of continuing *harm*; once the wrong ends, the claim accrues even if that wrong has caused a lingering injury. *Manuel* shows that the wrong of detention without probable cause continues for the length of the unjustified detention.

*Manuel II*, 903 F.3d at 669 (internal citations omitted).

> The wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends. . . . A further consideration supports our conclusion that the end of detention starts the period of limitations: a claim cannot accrue until the would-be

> plaintiff is entitled to sue, yet the existence of detention forbids a suit for damages contesting that detention's validity.

*Id.* at 670. Section "1983 cannot be used to obtain damages for custody based on a criminal conviction—not until the conviction has been set aside by the judiciary or an executive pardon." *Id.* "[The] detention was judicially authorized, which . . . means that a §1983 suit had to wait until his release." *Id.*

The parties focused their arguments on Barnhouse's pre-trial detention, yet in the Amended Complaint, Barnhouse bases his claim on his "incarcerat[ion] prior to trial, and his incarceration [that] continued until his eventual release 25 years later." (Filing No. 73 at 27.) In any event, the case law is clear that Barnhouse's claim—liberty deprivation without probable cause—accrued when his detention ended. Thus, his claim was timely brought within the two-year statute of limitations.

At this stage of the litigation, the Court must take the pleadings to be true and accept that Barnhouse was deprived of liberty without probable cause because the evidence was fabricated and the witness identification was based upon improperly suggestive tactics. Qualified immunity cannot protect the police officer defendants because case law gave them adequate notice that deprivation of liberty without probable cause violated clearly established constitutional rights. *See Gerstein v. Pugh*, 420 U.S. 103 (1975). Therefore, the Defendants' Motion to Dismiss Count V of the Amended Complaint is **denied**.

**E.**     <u>**Count VII: Failure to Intervene – Police Officer Defendants**</u>

The Amended Complaint alleges in Count VII that, "[d]uring the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." (Filing

No. 73 at 30.) This resulted in Barnhouse suffering "loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages." *Id.*

The Muncie Defendants argue that this claim should be dismissed because public officials cannot be liable for another person's constitutional violations on a theory of failure to intervene if the public official had no ability to compel the other person to not violate the plaintiff's constitutional rights. *Hoffman v. Knoebel*, 894 F.3d 836, 842–43 (7th Cir. 2018). They further assert that police officers cannot direct a prosecuting attorney to take or to refrain from taking any action related to the prosecution of a criminal defendant such as what evidence to present and which witnesses to call.  Additionally, they argue, the "Constitution does not impose a general duty to expose wrongdoing." *Id.* at 843.

The Muncie Defendants also argue that, to the extent Barnhouse alleges that Officers King, Stewart, Watters, Todd, and Blevins failed to intervene to prevent Sergeants Bailey and Winters from allegedly fabricating evidence, the Amended Complaint is devoid of allegations to plausibly suggest there was a realistic opportunity to intervene. The Amended Complaint does not allege that Officers King, Stewart, Watters, Todd, and Blevins were present during the alleged fabrication of the incriminating statements, and thus, they could not have intervened.

The Muncie Defendants assert that qualified immunity applies to this claim because qualified immunity protects them as to Counts II, IV, and V (*Brady* claim, *Julian* claim, and *Manuel* claim), so it necessarily follows there is no duty to intervene to prevent conduct that was not clearly established as a constitutional violation. The Muncie Defendants argue the Supreme Court has never endorsed a Section 1983 failure-to-intervene theory of liability for another public official's constitutional violations, and it has not held that circuit precedent can create clearly established law. They contend that it could not have been clearly established in 1992 that a public

25

official violates constitutional rights by failing to prevent another public official from violating the Constitution.

In response, Barnhouse asserts that in order to state a claim for failure to intervene, a plaintiff must allege that a constitutional violation occurred, the defendant knew about the constitutional violation, and the defendant had a reasonable opportunity to prevent the violation. *See Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017). The issue of whether an officer had a reasonable opportunity to intervene is usually a question for the jury. *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997). Barnhouse argues that when a plaintiff alleges he was deprived of his liberty as a result of a defendant's fabrication of evidence, it is plausible to infer that each defendant was aware of the deprivation of liberty and could have done something to stop it.

Barnhouse argues that he alleged in his Amended Complaint that the police officer defendants did have the ability to intervene to prevent his wrongful conviction, which involved numerous violations of his constitutional right to a fair trial.  He asserts that any of the police officer defendants could have intervened to stop the constitutional violations long before trial. They could have intervened during the unduly suggestive and coercive tactics of P.L.'s false identification of Barnhouse or during the fabricated and false confession of Barnhouse when he was interrogated, told the prosecutor or defense counsel before trial that Barnhouse was incarcerated based on false evidence, or revealed the truth during the course of trial.  Barnhouse contends that whether the police officer defendants could have compelled the prosecutor to drop the charges is not material; the failure to intervene claim does not depend on a successful result from the defendant's intervention but rather on the defendant's effort to try to intervene.

Barnhouse asserts that qualified immunity does not apply because the Seventh Circuit has long recognized that police officers who have a realistic opportunity to intervene and prevent a fellow officer from violating a plaintiff's rights but fail to do so may be held liable. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972).

The Court begins by reiterating that, although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. And "it is not enough to give a threadbare recitation of the elements of a claim without factual support." *Bissessur*, 581 F.3d at 603. "Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am.*, 725 F.3d at 818.

Barnhouse's failure to intervene claim is based entirely on this allegation: "During the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." (Filing No. 73 at 30.)  This is a classic threadbare, formulaic recitation of the elements of a claim.  Barnhouse has failed to plead sufficient factual support concerning the claim and any of the Defendants to state a claim.  Therefore, Count VII of the Amended Complaint must be **dismissed**, and the Court concludes that it is premature to make any determination regarding qualified immunity as to Count VII.

**F.**    **Count VIII: Municipal Liability – City of Muncie**

The Defendants argue that Barnhouse has alleged a "generic *Monell* count" for municipal liability under Section 1983, but he only has recited the elements of a *Monell* claim without any facts that could give rise to municipal liability or even an inference of municipal liability, so this claim should be dismissed.

The Defendants assert that it is well established there is no *respondeat superior* liability under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to allege a *Monell* claim, a plaintiff must plead not only that his rights were violated but also that the municipal defendant was the "moving force" behind his constitutional injury. *Id.* at 691–95. The "moving force" requirement is shown through (1) the existence of an express municipal policy that caused the alleged constitutional violation, (2) the person who committed the constitutional violation was a public official with final policymaking authority, or (3) the existence of a pattern, practice, or custom that was so widespread or persistent that it rises to the level of a municipal policy. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). A plaintiff pursuing a claim of municipal liability for a widespread practice must allege more than his own constitutional injury; "a series of violations must be presented to lay the premise for a widespread practice claim under *Monell*." *Gill*, 850 F.3d at 344 (internal quotation marks omitted).

The Defendants submit that Barnhouse has failed to allege that his constitutional injuries were caused by any express municipal policy or action of a final policymaking official. They further contend that Barnhouse has failed to allege any facts supporting a widespread practice that could give rise to a *de facto* city policy. Instead, Barnhouse simply has stated boilerplate recitations of the elements of a cause of action.

Barnhouse responds that *Monell* claims are not held to a heightened pleading standard, and the bar is not high for pleading a *Monell* claim. He asserts the Seventh Circuit has held that even "a single paragraph of allegations with 'a number of conclusions' that the City's 'highest policymaking officers' engaged in a 'widespread custom' of discrimination sufficed to state a claim for municipal liability." *Sanders v. Sheehan*, 2010 WL 2990121, at *4 (N.D. Ill. July 26, 2010)

(quoting *McCormick v. City of Chicago*, 230 F.3d 319 (7th Cir. 2000)).  He argues that "boilerplate allegations" are sufficient to support a *Monell* claim.

Barnhouse contends that his Amended Complaint pleads in ample detail that the specific policies and practices of the Muncie Police Department to pursue wrongful convictions—fabricating evidence, withholding exculpatory evidence, and coercing witness testimony—caused Barnhouse's constitutional injuries and injuries to other individuals.  He argues the City of Muncie has been adequately put on notice of the claim against it.

The Court understands Barnhouse's reliance on the Northern District of Illinois' decision in *Sanders* for the proposition that a single paragraph of allegations with a number of legal or factual conclusions is sufficient to state a claim for municipal liability. However, the Seventh Circuit more recently held in 2017,

> To succeed on this *de facto* custom [or practice] theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents. At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.

*Gill*, 850 F.3d at 344 (internal citation omitted).

Upon review of the Amended Complaint, the Court concludes that it is lacking the "single paragraph of allegations" that was sufficient in *Sanders* or the "allegations that come close to the level of boilerplate vagueness" that were sufficient in *Lanigan* to support a *Monell* municipal liability claim. The Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey*, 287 F.3d at 658. Mere labels, conclusions, or formulaic recitations of the elements of a cause of action without factual support are insufficient. *Twombly*, 550 U.S. at 555; *Bissessur*, 581 F.3d at 603.

Instead of alleging some minimal factual allegations of municipal policy, widespread practice, or action by a policymaking official, Barnhouse has pled unsupported, conclusory statements and recitations of the elements of a *Monell* claim.  While Barnhouse is not required to meet a heightened pleading standard or allege detailed factual allegations, he must do more than assert unsupported, conclusory statements of fact concerning the elements of his *Monell* claim. As currently pled, Barnhouse's *Monell* claim must be **dismissed**.

G.   <u>Count IX: Claim Under the Rehabilitation Act – City of Muncie</u>

The Muncie Defendants assert that Count IX of the Amended Complaint, requesting relief under the Rehabilitation Act ("Act"), should be dismissed because the Act does not provide for money damages based on vicarious liability. They argue,

> In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 288 (1998), the Supreme Court held that Title IX does not "allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice." Subsequently, courts have held that the same limitation applies to claims under the Rehabilitation Act. *See Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012) ("*Gebser* provides the correct standard [in a Rehabilitation Act case]"). This rule is consistent with Seventh Circuit precedent. The year before the Supreme Court decided *Gebser*, the Seventh Circuit refused to apply agency principles in a Title IX case because that statute prohibits discrimination by "programs or activities." *Smith v. Metro. Sch. Dist.*, 128 F.3d 1014, 1022-28 (7th Cir. 1997). The same logic applies here, because the Rehabilitation Act operates similarly to Title IX. *See* 29 U.S.C. § 794 (providing that the Rehabilitation Act applies to "programs or activities"). Thus, Plaintiff cannot recover based on a vicarious liability theory, and, therefore, cannot state a claim for damages against the City of Muncie, as the First Amended Complaint lacks any factual allegations to suggest that the City of Muncie directly discriminated against Plaintiff upon the sole basis of a disability. Therefore, this Court should dismiss Count IX of the First Amended Complaint.

(Filing No. 79 at 24.)

Barnhouse argues in response that the City of Muncie receives federal funds, and as such, it is required to ensure that no individual faces discrimination on the basis of a disability under any program or activity it controls. Barnhouse asserts that this is precisely what happened to him as

alleged in the Amended Complaint. The police officer defendants treated him differently than they would have another criminal suspect by taking advantage of his mental disabilities. They fabricated a confession or coerced Barnhouse into falsely confessing knowing that it would be difficult or impossible for Barnhouse to defend himself given his limited mental capacity. The "programs or activities" of arrest, interrogation, and investigation were conducted in a discriminatory manner, and the City of Muncie is therefore liable under the Act. In support of his argument, Barnhouse points the Court to *McHenry v. City of Ottawa, Kansas*, 2017 WL 4269903 (D. Kan. Sept. 26, 2017), where the district court permitted a Rehabilitation Act claim against a city by an individual with mental illness who suffered excessive force at the hands of the city's police officers.

Barnhouse argues that the Muncie Defendants are incorrect in their assertion that a vicarious liability claim is not cognizable under the Act.  Barnhouse points out the Supreme Court has expressly left this question open in the context of the Americans with Disabilities Act (the "ADA"), the interpretation of which often tracks with the Rehabilitation Act.  *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773–74 (2015). "The Fourth, Seventh, Ninth, and Eleventh Circuits have all agreed that when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the [Rehabilitation Act], the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA." *Delano-Pyle v. Victoria Co., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002); *see also Reed v. Illinois*, 2016 WL 2622312, at *3 (N.D. Ill. May 9, 2016). He also points to the case of *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015), wherein the Seventh Circuit reversed the lower court's dismissal of a claim under the Rehabilitation Act against a hospital for the acts of its employees. The Seventh Circuit held that the claim was legally sufficient at the pleadings stage.

Barnhouse argues that the Court should reject the Muncie Defendants' inapposite comparisons to an out-of-circuit case for the proposition that the City of Muncie should not be vicariously liable under the Act, and that the Act should be analogized to Title IX, despite on-point authority in the Seventh Circuit that the Act is analogous to the ADA. He asserts that the Court should allow his claim under the Act to move forward to discovery.

At the motion to dismiss stage, the Court accepts as true all factual allegations in Barnhouse's Amended Complaint and draws all inferences in his favor. *Bielanski*, 550 F.3d at 633. The Court agrees with the district court from the Northern District of Illinois:

> While [the *Reed v. Columbia St. Mary's Hospital*] opinion does not expressly address vicarious liability under Title II or the Rehabilitation Act, its outcome constrains this Court in finding—as a matter of law at this juncture—that the State Defendants cannot be held liable for damages under a vicarious liability theory. Indeed, other courts in this district have applied *Silk*'s reasoning to impose vicarious liability over ADA and/or Rehabilitation Act claims falling outside of the employment discrimination context.

*Reed v. Illinois*, 2016 WL 2622312, at *4 (N.D. Ill. May 9, 2016). The Muncie Defendants' argument for dismissal is based solely on the issue of vicariously liability. Consistent with the outcome of *Reed*, the Court **denies** the Muncie Defendants' Motion to Dismiss Count IX of the Amended Complaint.

## H.   Count X: Intentional Infliction of Emotional Distress – Police Officer Defendants

Count X of the Amended Complaint asserts a state law claim for intentional infliction of emotional distress against the police officer defendants. The Muncie Defendants argue that, to the extent the claim is intended to be asserted against the police officers in their individual capacities, such a claim is barred by the Indiana Tort Claims Act. Indiana Code § 34-13-3-5(b) provides that a plaintiff cannot "sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment." *Bushong*

*v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). A complaint that includes allegations of an employee's conduct within the scope of employment that led to the cause of action is "an immediate and early indication that the employee is not personally liable." *Id.* at 472.

Barnhouse alleges that the actions of the police officer defendants were undertaken within the scope of their employment. As such, the Muncie Defendants argue, this claim is barred under Indiana Code § 34-13-3-5(b), and dismissal of the claim against the police officers in their individual capacity is appropriate.

Furthermore, the Muncie Defendants assert, other provisions of the Indiana Tort Claims Act provide immunity to the police officer defendants against this claim. A government "employee acting within the scope of the employee's employment is not liable if a loss results from . . . the adoption and enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). While immunity will not apply to claims of false arrest, "'add on' claims such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct." *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1032 (N.D. Ind. 2014). Barnhouse alleges that the police officers' actions were taken within the scope of their employment, which places the claim within the scope of the Indiana Tort Claims Act. The intentional infliction of emotional distress claim is an "add-on" claim that is alleged to have been a product of improper conduct, so, the Muncie Defendants argue, the claim cannot survive.

Indiana Code § 34-13-3-3(6) provides that a government "employee acting within the scope of the employee's employment is not liable if a loss results from . . . the initiation of a judicial or an administrative proceeding." Thus, the police officers are immune from the emotional distress claim arising from the decision to file charges against and prosecute Barnhouse. Additionally, a

government "employee acting within the scope of the employee's employment is not liable if a loss results from . . . the act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind. Code § 34-13-3-3(10).  Thus, the police officers are entitled to immunity for any loss that resulted from the actions of anyone other than the "governmental entity," such as the prosecutor's decision to file charges, Barnhouse's pre-trial detention, his convictions, and the confinement following conviction.

In response, Barnhouse acknowledges that, because of immunity, he cannot maintain his state law claims against the police officers personally.  However, he asserts, the statutory immunity does not bar his state law tort claims against the City of Muncie for the acts of its agents, the police officer defendants. *See Lessley v. City of Madison*, 654 F. Supp. 2d 877, 902 (S.D. Ind. 2009) ("[p]laintiffs cannot sue [police officer] personally for state torts, but they may be able to hold the [defendant municipality] liable for any state torts that [the police officer] committed"). Barnhouse argues that his state law claims for intentional infliction of emotional distress, civil conspiracy, and *respondeat superior* against the City of Muncie should not be dismissed.

Indiana Code § 34-13-3-5(b) provides the police officer defendants immunity against personal liability for the intentional infliction of emotional distress claim, which arises from the officers' conduct undertaken within the scope of their employment.  Furthermore, Indiana Code § 34-13-3-3(8) provides immunity against this claim.  *See Reiner*, 33 F. Supp. 3d at 1032 ("add on" claims for intentional infliction of emotional distress cannot survive).  While Barnhouse argues that his state law claim for intentional infliction of emotional distress against the City of Muncie should not be dismissed, the Amended Complaint pleads this claim against the "Individual Defendants"—the police officer defendants and co-defendant Sobieralski—not against the City of Muncie (*see* Filing No. 73 at 33). Because of statutory immunity provided to the police officers,

34

Count X of the Amended Complaint for intentional infliction of emotional distress is **dismissed** as to the police officer defendants.

## I.    Count XI: Malicious Prosecution – Police Officer Defendants

Count XI of the Amended Complaint asserts a state law claim for malicious prosecution against the police officer defendants. As with the previous claim, the Muncie Defendants argue that, to the extent the claim is intended to be asserted against the police officers in their individual capacities, the claim is barred by the Indiana Tort Claims Act.

The Muncie Defendants point out that the Indiana Tort Claims Act shields government employees from state law malicious prosecution claims as a government "employee acting within the scope of the employee's employment is not liable if a loss results from . . . the initiation of a judicial or administrative proceeding." Ind. Code § 34-13-3-3(6); *see also Julian*, 732 F.3d at 846 (stating that Indiana law grants absolute immunity to police officers for malicious prosecution claims). Because Barnhouse alleges that all actions taken by the police officers were taken within the scope of their employment, the Muncie Defendants assert, their actions fall squarely within the scope of the statutory immunity, and the malicious prosecution claim should be dismissed.

In response, Barnhouse states, "Plaintiff voluntarily dismisses his state law malicious prosecution claim." (Filing No. 81 at 42 n.8.) Because of statutory immunity provided to the police officers, and because Barnhouse agrees to dismiss this claim, Count XI of the Amended Complaint for malicious prosecution is **dismissed** as to the police officer defendants.

## J.    Count XII: *Respondeat Superior* – City of Muncie

Count XII of the Amended Complaint asserts a state law claim for *respondeat superior* against the City of Muncie. The Muncie Defendants argue,

> Plaintiff's *respondeat superior* claim fails as the Defendant Officers are immune for any alleged violations of state law—IIED and malicious prosecution. An

employer will be liable for the acts of its employees that are committed within the course and scope of their employment. *See Hensley*, 735 F.3d at 595. As discussed above, the Defendant Officers are immune for the claims of IIED and malicious prosecution. As such, the City cannot be held vicariously liable for the actions of the Defendant Officers as their actions are shielded by immunity. Therefore, this Court should dismiss Count XII of the First Amended Complaint.

(Filing No. 79 at 28.)

Barnhouse argues statutory immunity does not bar his state law tort claims against the City of Muncie for the acts of its agents, pointing to *Lessley*, 654 F. Supp. 2d at 902 ("[p]laintiffs cannot sue [police officer] personally for state torts, but they may be able to hold the [defendant municipality] liable for any state torts that [the police officer] committed").  He also points to *Donald v. Outlaw*, 2018 U.S. Dist. LEXIS 92959, at *9 (N.D. Ind. May 31, 2018), where the court allowed state law claims to proceed on a *respondeat superior* theory against the city defendant. Barnhouse asserts that his state law claim for *respondeat superior* against the City of Muncie should not be dismissed.

The Court concludes that the *respondeat superior* claim against the City of Muncie must be dismissed because the underlying tort claims against Muncie's employees are being dismissed based on immunity. The Court recognizes that other district courts have permitted *respondeat superior* claims to proceed.  In *Donald v. Outlaw*, the court dismissed the malicious prosecution claim against both the city and the officers based on immunity, but the court allowed the other tort claims to proceed only against the city because the officers had individual capacity immunity. However, the court did not consider other statutory immunity provisions that could have precluded the claim. *Donald*, 2018 U.S. Dist. LEXIS 92959, at *9. Likewise, in *Lessley*, the court allowed tort claims to proceed against the city defendant after concluding that individual capacity immunity prohibited the claims against the police officer, but the court did not consider other statutory immunity provisions. *Lessley*, 654 F. Supp. 2d at 902.

In this case, immunity is provided to the police officer defendants in their individual capacity pursuant to Indiana Code § 34-13-3-5(b), but complete immunity also is provided under Indiana Code §§ 34-13-3-3(8) and 34-13-3-3(6). The Court determines that it must follow the Seventh Circuit's approach from *Serino*: "As there are no underlying claims against [the police officer defendant] remaining, [plaintiff's] respondeat superior claims against the city fall away as well." *Serino v. Hensley*, 735 F.3d 588, 596 n.7 (7th Cir. 2013). Therefore, the Court **grants** the Motion to Dismiss Barnhouse's *respondeat superior* claim against the City of Muncie.

**K.**     **Count XIII: Civil Conspiracy – Police Officer Defendants**

Count XIII of the Amended Complaint asserts a state law claim for civil conspiracy against the police officer defendants. As with the other state law tort claims, the Muncie Defendants argue that, to the extent the claim is intended to be asserted against the police officers in their individual capacities, the claim is barred by the Indiana Tort Claims Act, and Barnhouse acknowledges that he cannot maintain this claim against the police officers personally.

The Defendants further argue,

> When two or more persons "engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means," a civil conspiracy is recognized. *Rosenbaum v. White*, 692 F.3d 593, 606 (7th Cir. 2012). However, in Indiana, a separate, independent cause of action for civil conspiracy does not exist. *Id.* Rather, a plaintiff may sue for damages resulting from the conspiracy, which requires the plaintiff to "demonstrate that the defendants acted in concert with another party in the commission of an independent tort." *Id.* Here, Plaintiff asserts that the Defendant Officers engaged in a civil conspiracy to commit the above alleged torts—IIED and malicious prosecution. However, because the Defendant Officers are immune for these torts and civil conspiracy is not recognized as an independent cause of action in Indiana, the Defendant Officers cannot be said to have conspired to commit the torts and Count XIII of the First Amended Complaint should be dismissed.

(Filing No. 79 at 28–29.)

As with his claim for intentional infliction of emotional distress, Barnhouse concedes that he "cannot maintain his state-law claims against the individual Defendants personally. But this immunity provision does not bar Plaintiff's state-tort claims against Muncie for the acts of their agents." (Filing No. 81 at 41.)

Barnhouse pleaded his civil conspiracy claim against the "Individual Defendants"—the police officer defendants and co-defendant Sobieralski—not against the City of Muncie (*see* Filing No. 73 at 36). Furthermore, in light of the Seventh Circuit's holding in *Rosenbaum* that a civil conspiracy claim is not an independent cause of action, and because the underlying torts in this case are being dismissed based on immunity, the Court concludes that the civil conspiracy claim against the police officer defendants asserted in Count XIII must be **dismissed**.

## L.    Count XIV: Indemnification Claim – City of Muncie

In Count XIV of the Amended Complaint, Barnhouse alleges,

182. Indiana law provides that public entities are directed to pay any tort judgment or settlement for compensatory damages for which employees are liable within the scope of their employment activities.

183. Defendants are or were employees of the City of Muncie or the Indiana State Police, who acted within the scope of their employment in committing the misconduct described herein.

(Filing No. 73 at 37.)

The Muncie Defendants argue this indemnification claim should be dismissed because the Court lacks subject matter jurisdiction over the claim. Under Indiana Code § 34-13-4-1, the City of Muncie has a statutory obligation to indemnify any judgment against the police officer defendants. The Muncie Defendants explain, where liability has not been established in the case, and a judgment has not been entered, the indemnification claim is not ripe because "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Sowell*

*v. Dominguez*, 2011 WL 294758, at \*14 (N.D. Ind. Jan. 26, 2011). If a plaintiff brings an indemnification claim before the underlying liability is resolved, courts have consistently dismissed such claims without prejudice for lack of subject matter jurisdiction. *See id.* (where liability was not yet established, indemnification claim was dismissed without prejudice); *Smith v. Lake County*, 2017 WL 568590, at \*9 (N.D. Ind. Feb. 13, 2017) (same); *Hobson v. Dominguez*, 2012 WL 4361537, at \*16 (N.D. Ind. Sept. 24, 2012) (same).

The Muncie Defendants note, "Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction." *Estate of Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1073 (S.D. Ind. 2011). When a claim is not ripe, the district court lacks subject matter jurisdiction over the claim, and the proper course is to dismiss the claim. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008); *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010). Barnhouse's indemnification claim against the City of Muncie is based on the alleged misconduct committed by the police officer defendants.  Liability has not been established at this stage and no judgment has been entered that would give rise to an indemnification claim, so, the Muncie Defendants argue, the claim is not ripe, and the Court lacks subject matter jurisdiction over the claim. Dismissal is appropriate.

Barnhouse responds that the Seventh Circuit has expressly held that a plaintiff may bring an indemnification claim prior to final judgment against the indemnitee. *See Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).  It is similar to seeking a declaratory judgment against an insurer and promotes judicial economy.  Barnhouse argues he may bring his indemnification claim at the outset of the lawsuit, and the claim must then be resolved after liability has been established.

The Defendants reply by distinguishing *Wilson*. They assert,

> In *Wilson*, the Seventh Circuit held that the plaintiff could assert his claim against the City of Chicago because the City had denied any intention to indemnify its officer if the plaintiff obtained a judgment against him. *Wilson*, 120 F.3d at 685. The court did not hold, as Plaintiff suggests, that indemnification claims are always ripe for adjudication from the outset of a lawsuit. Rather, once the City advised of its refusal to pay any judgment that created a substantial controversy between the plaintiff and the City, and the claim ripened into a justiciable claim under Article III.

(Filing No. 85 at 18.)

The Court finds the Muncie Defendants' argument to be well-taken and agrees with the analysis and conclusion of *Sowell*, *Smith*, and *Hobson*.  The indemnification claim is not yet ripe because liability has not been established, no judgment has been entered, and a settlement has not been reached, and furthermore, there are no allegations that the City of Muncie is refusing to indemnify the police officer defendants if they are found liable.  Because the claim is not ripe, the Court lacks subject matter jurisdiction.  Therefore, the Court **dismisses** Count XIV of the Amended Complaint.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** the Defendants' Partial Motion to Dismiss (Filing No. 78).  The Court **dismisses without prejudice**[1] Count I as to Officers King, Stewart, Watters, Todd, and Blevins.  The Court **grants** the Motion to Dismiss Count II against Officer Stewart, Officer Watters, Officer Todd, Officer Blevins, Sergeant Bailey, and Sergeant Winters, and **dismisses the claim without prejudice**, but the Motion to Dismiss Count II against Officer King is **denied**.  Count IV is **dismissed with prejudice** on the basis of qualified immunity.  The Motion to Dismiss Count V of the Amended Complaint

---

[1] "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed . . . [unless] amendment would be futile or otherwise unwarranted." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519, 520 (7th Cir. 2015).

is **denied**.  Count VII and Count VIII are **dismissed without prejudice**.  The Motion to Dismiss

Count IX is **denied**.  Count X, Count XI, and Count XIII of the Amended Complaint are **dismissed**

**with prejudice** as to Officer King, Officer Stewart, Officer Watters, Officer Todd, Officer

Blevins, Sergeant Bailey, and Sergeant Winters.   Count XII against the City of Muncie is

**dismissed with prejudice**. Lastly, the Court **dismisses without prejudice**[2] Count XIV of the

Amended Complaint. Barnhouse is granted leave until **November 20, 2020** to file a Second

Amended Complaint regarding the claims dismissed without prejudice, if such filing would not be

futile.  If nothing is filed by that date, this matter will proceed with the claim in Count III, as well

as the claims that have survived the initial hurdle of a motion to dismiss.

      **SO ORDERED.**

Date:  11/4/2020

                                  Hon. Tanya Walton Pratt, Judge
                                  United States District Court
                                  Southern District of Indiana

DISTRIBUTION:

J. Derek Atwood
INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov

Matthew Knight
KNIGHT HOPPE KURNIK & KNIGHT LTD
mknight@khkklaw.com

Katlyn M. Christman
KNIGHT HOPPE KURNIK & KNIGHT LTD
kchristman@khkklaw.com

Elizabeth A. Knight
KNIGHT HOPPE KURNIK & KNIGHT LTD
eknight@khkklaw.com

Heather Lewis Donnell
LOEVY & LOEVY
heather@loevy.com

Jonathan I. Loevy
LOEVY & LOEVY
jon@loevy.com

Bryan Findley
INDIANA ATTORNEY GENERAL
bryan.findley@atg.in.gov

Arthur Loevy
LOEVY & LOEVY
arthur@loevy.com

---

[2] A dismissal for lack of subject matter jurisdiction is not a decision on the merits and thus is without prejudice. *See Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018) ("a dismissal for want of subject-matter jurisdiction is necessarily without prejudice").

Danielle O. Hamilton
LOEVY & LOEVY
hamilton@loevy.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Byron D. Knight
KNIGHT HOPPE KURNIK & KNIGHT LTD
bknight@khkklaw.com

Aleksandrina Penkova Pratt
INDIANA ATTORNEY GENERAL
aleksandrina.pratt@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL
mollie.slinker@atg.in.gov

Joseph W. Smith
KNIGHT HOPPE KURNIK & KNIGHT LTD
jsmith@khkklaw.com